*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 09a0021a.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

  *Plaintiff-Appellee,*

  *v.*                                              No. 06-5576

TERRELL R. BAILEY,

  *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
No. 05-00038—David L. Bunning, District Judge.

Argued: September 18, 2007

Decided and Filed: January 20, 2009

Before: MOORE and GRIFFIN, Circuit Judges; TARNOW, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Jessica A. Dipre, DINSMORE & SHOHL, Cincinnati, Ohio, for Appellant. Andrew Sparks, ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for Appellee **ON BRIEF:** Jessica A. Dipre, Michael J. Newman, Jennifer K. Swartz, DINSMORE & SHOHL, Cincinnati, Ohio, for Appellant. Charles P. Wisdom, Jr., David P. Grise, ASSISTANT UNITED STATES ATTORNEYS, Lexington, Kentucky, for Appellee.

  MOORE, J., delivered the opinion of the court, in which TARNOW, D. J., joined. GRIFFIN, J. (pp. 15-21), delivered a separate opinion dissenting in part and concurring in part.

_____

[*]The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

———————————————

**AMENDED OPINION**

———————————————

KAREN NELSON MOORE, Circuit Judge.    Defendant Terrell R. Bailey ("Bailey") has submitted a petition for rehearing by the panel or, in the alternative, a petition for rehearing en banc, challenging our prior panel opinion upholding his convictions and sentences for possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1); possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c)(1)(A)(i); and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). *See United States v. Bailey*, 510 F.3d 562 (6th Cir. 2007).  We grant the petition for rehearing and amend the panel opinion to correct a factual mistake concerning which evidence had been admitted for the jury's consideration regarding Bailey's firearm convictions and thus may be reviewed on an insufficiency-of-the-evidence challenge.  We also amend the opinion to reflect the legal consequences of correcting the prior opinion's factual mistake.

We adhere to our prior panel opinion, except for the opening paragraph and parts III.B., III.C., IV, and V.  We **VACATE** parts III.B., III.C., IV, and V, and substitute the opinion below for those parts.  We adopt by reference the following parts of our prior panel opinion:  part I, discussing the factual and procedural background; part II, affirming the district court's sentencing of Bailey as a career offender; the opening paragraph of part III, setting forth the standard for a sufficiency-of-the-evidence challenge; and part III.A., affirming Bailey's conviction pursuant to 21 U.S.C. § 841(a)(1).  In sum, we **AFFIRM** Bailey's conviction under 21 U.S.C. § 841(a)(1), **REVERSE** his conviction under 18 U.S.C. § 924(c)(1)(A)(i), and **REVERSE** his conviction under 18 U.S.C. § 922(g)(1).  We **REMAND** to the district court for further proceedings consistent with this opinion.

In evaluating Bailey's insufficient-evidence claim, the prior panel opinion relied heavily on Elizabeth Stanford's ("Stanford") written and oral statements made at the scene of the arrest stating that she had seen Bailey place the gun under his seat in the car.

These statements constituted one of four key components of evidence that the opinion cited in support of the decision to uphold Bailey's conviction under 18 U.S.C. § 924(c)(1)(A)(i) and the only evidence that the opinion cited in support of the decision to uphold Bailey's conviction under 18 U.S.C. § 922(g)(1). The prior opinion's reliance on anything Stanford said or wrote at the scene of the arrest, however, was mistaken. The district court had admitted her arrest-scene statements only for impeachment purposes and had forbidden the jury from considering the statements as evidence in determining Bailey's guilt. We therefore amend the panel opinion to correct this factual mistake.[1]

After allowing the prosecutor to ask Stanford questions about statements she made on the night of Bailey's arrest, and after allowing Jordan to testify to what Stanford told him that night, the district court gave the jury the following instructions:

> You heard through [Jordan] that Miss Stanford gave other *oral statements* at the time that the car was—after she was pulled out of the vehicle. You are permitted to consider those statements for the purposes of judging her credibility to determine the veracity of the written statement. She apparently gave a written statement that said one thing, she testified differently today. She gave the written statement and oral statement at the time. You can consider the *oral statements* that she gave to determine her credibility for impeachment purposes, if you will. You're not to consider those for the truth of what she said orally.
> And that may be a legal—I try to make things as non-legal as I can. I've been up here thinking how I can give this limiting instruction in a way that you can understand. I guess the easiest way to explain it is you can consider her oral statements in judging her credibility. That's probably the easiest way to explain it to you. You are not to consider it for the truth of what she actually said. *That is, regarding the gun and the drugs*.
> The written statement has been admitted into evidence and you'll have that as Exhibit 12.

---

[1] In opposition to Bailey's petition for rehearing, the government argues that Bailey has waived his right to object to the admission of Stanford's written statement because he never made this objection at trial. This argument is inapposite. The district court ultimately allowed the jury to consider Stanford's written statement only for impeachment purposes, which Bailey does not now challenge on his petition for rehearing. Moreover, when the district judge initially admitted the written statement, before changing his mind and excluding the evidence for all but impeachment purposes, Bailey did make an objection. Trial Tr. at 134, *United States v. Bailey*, No. CR 05-38 (E.D. Ky. 2006) (noting that Stanford's statement was "admitted over objection").

Trial Tr. at 160 (emphasis added).  Shortly after making this ruling that clearly limits the use of Stanford's oral statements, however presented to the jury, to impeachment, the district court also limited the use of Exhibit 12 to impeachment only.  *Id.* at 181.  The district court limited the use of all testimony and reports purporting to reproduce Stanford's oral and written declarations made at the scene of the arrest to use for impeachment only.  Whether information about these statements came from the written report, from Stanford's testimony, or from Jordan's testimony, such information was admitted only to impeach Stanford and not for the truth "regarding the gun and the drugs."  *Id.* at 160; *see also* Joint Appendix ("J.A.") at 61 (Written Jury Instr. 21, limiting use of prior statements or testimony to impeachment only).

Once we remove Stanford's oral and written statements made on the night of Bailey's arrest from the body of evidence that we may consider, then there remains insufficient evidence to convict Bailey under either § 924(c)(1)(A)(i) or § 922(g)(1).[2] Because Bailey contests only the "possession" elements of both his firearm-related convictions, we will address the sufficiency of the evidence for Bailey's conviction under both §§ 924(c)(1)(A)(i) and 922(g)(1) by generally discussing the sufficiency of the evidence to establish possession.  "Both actual possession and constructive possession may be proved by direct or circumstantial evidence."  *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir.), *cert. denied*, 414 U.S. 866 (1973).  "A person who knowingly has direct physical control over a thing at a given time is then in actual possession of it."  *United States v. Frederick*, 406 F.3d 754, 765 (6th Cir. 2005).  Bailey did not have a gun on his person when the police arrested him.  *See United States v. Pugh*, 405 F.3d 390, 394, 404 (6th Cir. 2005) (holding that defendant who "was pulled out of bed and had a shotgun beneath his body," therefore, "actually possessed the gun

---

[2]As noted above, we adopt by reference the opening paragraph of Part III of the original panel opinion setting forth the standard of review as follows:

> "The relevant question in assessing a challenge to the sufficiency of the evidence is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. McAuliffe*, 490 F.3d 526, 537 (6th Cir. 2007).  When reviewing the record, "the court views all evidence in the light most favorable to the prosecution and determines whether there is any evidence from which a reasonable jury could find guilt beyond a reasonable doubt."  *United States v. Talley*, 164 F.3d 989, 996 (6th Cir.1999).

*U.S. v. Bailey*, 510 F.3d 562, 566 (6th Cir. 2007).

when he was apprehended"). Nor did the police see Bailey holding a gun prior to his arrest. *See United States v. Caraway*, 411 F.3d 679, 680, 683 (6th Cir. 2005) (finding sufficient evidence to establish actual possession when officer saw defendant holding gun and then drop the gun while fleeing). There is no evidence to establish that Bailey had direct physical control over the firearm; accordingly, we must conclude that Bailey did not actually possess the firearm.

"Constructive possession exists when a person does not have actual possession but instead *knowingly* has the power and the *intention* at a given time to exercise dominion and control over an object, either directly or through others." *Craven*, 478 F.2d at 1333 (emphasis added). "Proof that 'the person has dominion over the premises where the firearm is located' is sufficient to establish constructive possession."[3] *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998) (quoting *United States v. Clemis*, 11 F.3d 597, 601 (6th Cir. 1993)), *cert. denied*, 525 U.S. 1166 (1999). However, "[p]resence alone cannot show the requisite knowledge, power, or intention to exercise

---

[3]Our caselaw does not define "dominion." A consensus, however, has developed in federal and state courts "that where the defendant is in nonexclusive possession of premises on which [illicit contraband] [is] found, it cannot be inferred that he knew of the presence of such [contraband] and had control of [it], unless there are other incriminating statements or circumstances tending to buttress such an inference." Emile F. Short, Annotation, *Conviction of Possession of Illicit Drugs Found in Premises of which Defendant was in Nonexclusive Possession*, 56 A.L.R. 3d 948, § 4 (1974).

The corollary, demonstrated by our own caselaw discussed *infra*, is that nonexclusive possession does not establish "dominion over the premises" sufficient to show constructive possession. This axiom accords with the doctrinal development of the dominion-over-the-premises rule in the Sixth Circuit. The leading case, *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998), quotes *United States v. Clemis*, 11 F.3d 397, 601 (6th Cir. 1993), for the principle, and *Clemis* in turn cites *United States v. Snyder*, 913 F.3d 300, 304 (6th Cir. 1990). The *Snyder* case addressed a sentencing enhancement for possession of a firearm during the commission of an offense and cited an Eighth Circuit case quoting a Fifth Circuit case for the definition of constructive possession. Ultimately, then, we must look to the Fifth Circuit opinion, *United States v. Cardenas*, 748 F.2d 1015 (5th Cir. 1984), for the origins of the dominion-over-the-premises rule in our caselaw. *Cardenas* held that "[a] person has constructive possession if he has 'ownership, dominion, or control over the contraband itself, *or dominion over the premises* in which the contraband is concealed." 748 F.2d at 1019 (internal quotations omitted). The Fifth Circuit immediately elaborated: "To find constructive possession, however, more evidence than mere physical proximity of the defendant to the [contraband] is required. It is necessary that some nexus between the accused and the [contraband] be established." *Id.* at 1019-20. "[M[ere presence in the area where the [contraband] is discovered or mere association with . . . the property where it is located[] is insufficient to support a finding of possession." *Id.* at 1020. *Cardenas* thus stands for the principle that physical proximity to the contraband and presence in the premises where the contraband is found cannot show dominion over the premises sufficient to establish constructive possession of the contraband. The principle accords with the widely held rule that nonexclusive possession of the premises cannot establish constructive possession over items found within the premises.

control over the unregistered firearms."**4** *United States v. Birmley*, 529 F.2d 103, 107-08 (6th Cir. 1976).

We find it critical in this case to reiterate that the theory of constructive possession requires "specific intent." *United States v. Newsom*, 452 F.3d 593, 606 (6th Cir. 2006). We also find instructive our sister circuits' illumination of the standard required for the government to establish such intent. The Fifth Circuit has recently explained that if a defendant "den[ies] any knowledge of a thing found in an area under his control," as Bailey does in this case, "[t]he government then must offer evidence to prove that the defendant (1) knew that the thing was present, and (2) intended to exercise[] dominion or control over it." *United States v. Jones*, 484 F.3d 783, 788 (5th Cir. 2007). The D.C. Circuit holds that in addition to knowledge and proximity, "[t]here must be some action, some word, or some conduct that links the individual to the [contraband] and indicates that he had some stake in [it], some power over [it]." *United States v. Clark*, 184 F.3d 858, 863 (D.C. Cir. 1999) (quoting *United States v. Pardo*, 636 F.2d 535, 549 (D.C. Cir. 1980)). The Tenth Circuit discusses the same widely held doctrine: "the government must present evidence to show some connection or nexus between the defendant and the firearm," which can be established by a showing that the defendant had "*knowledge* and *access* . . . [to the] firearm." *United States v. Jameson*, 478 F.3d 1204, 1209 (10th Cir.), *cert. denied*, --- U.S. ---, 128 S. Ct. 321 (2007).

Once we remove Stanford's written and oral statements made at the scene of Bailey's arrest, the only evidence supporting Bailey's conviction for constructive possession of the firearm is the fact that the loaded gun was found underneath Bailey's seat in the stolen car he was driving and that he had attempted to evade police. The attempt to evade arrest, however, proves little because Bailey might well have taken this action in an effort to evade detection of the two bags of crack cocaine found in his pants.

---

**4**The dissent states that "proximity [to a firearm] coupled with other incriminating evidence" can establish constructive possession. Dissent at 17. However, the cases that the dissent cites in support of this proposition are distinguishable from Bailey's. For example, in *United States v. Mayberry*, 540 F.3d 506, 515 (6th Cir. 2008), although the defendant did not challenge his conviction for possessing a firearm, we noted that there was sufficient evidence of constructive possession because the defendant had touched the firearm, given conflicting explanations for why he touched it, tried to get others to lie about the firearm, and had used the weapon in two armed robberies.

Bailey testified at trial that he was not aware of the gun inside the car; that he did not put a gun inside the car; and that he did not have a gun on his person when he got inside the car. Stanford testified at trial that she first saw the gun when the police officers removed it from the car. Even if the jury found that Bailey and Stanford were not credible, the government did not advance any evidence establishing constructive possession beyond the fact that Bailey drove the car in which the gun was found. Of particular significance, the government could not show that Bailey's fingerprints were on the gun. Furthermore, Bailey did not own the car he was driving, but rather borrowed the car from his friend John. Bailey offered uncontradicted testimony at trial that on the night in question, John dropped off the car for Bailey to use to drive his girlfriend Stanford home. Bailey also used the car to drive his friend Darius to Darius's house and was driving Stanford home when the police stopped him. Because individuals other than Bailey used the car on the night Bailey was arrested and in the days before, no juror could conclude beyond a reasonable doubt that the mere fact that Bailey was driving the car meant that Bailey had placed the gun beneath the driver's seat.[5]  In sum, the government has presented no evidence establishing a nexus between Bailey and the gun by showing that Bailey had knowledge of, access to, and an intent to exercise control over the gun.

After the close of the evidence, Bailey renewed his motion for a judgment of acquittal on the two counts charging him with possession of a firearm under §§ 922(g) and 924(c)(1)(A)(i).  The district court denied these motions, stating that "viewing the evidence in the light most favorable to the Government, though the defendant denied the knowledge about the gun, the credibility of the witnesses is in the exclusive province of the jury, and they can choose or not to believe him as relates to the gun." Trial Tr. at

---

[5]The decision in *United States v. Castano*, 543 F.3d 826 (6th Cir. 2008), is distinguishable. In *Castano*, the owner of the truck in which the firearm was found testified that he had thoroughly cleaned his car right before lending it to the defendant and that there was no gun in the car when he lent it to the defendant. *Id.* at 829. Although the defendant presented evidence that someone else had left the gun in the truck the night before the truck was cleaned and loaned to the defendant, there was no suggestion that a third party entered the truck after the defendant borrowed it. *Id.* at 830-31. In this case, by contrast, there was uncontradicted testimony that multiple people other than Bailey either had access to or drove the car on the night that the gun was found. The fact that the car's owner testified that there was no gun in the car when it was stolen is irrelevant because many other people had access to the car that night and Bailey was not in sole possession of the car from the time that it was stolen until the time the gun was found.

370.  The district court is correct that assessment of the credibility of the witness lies within the province of the jury.  In reviewing the sufficiency of the evidence, however, the court of appeals must not "allow the jury's discrediting of the defendant's testimony to make up for a shortfall in the sufficiency of the government's evidence."  *United States v. Toms*, 136 F.3d 176, 182 (D.C. Cir. 1998).  The reason for this rule, first articulated by Judge Learned Hand in 1952, is that "[t]here is no principled way of deciding when the government's proof, less than enough to sustain the conviction, is nevertheless enough to allow adding negative inferences from the defendant's testimony to fill the gaps."  *United States v. Zeigler*, 994 F.2d 845, 850 (D.C. Cir. 1993) (applying *Dyer v. MacDougall*, 201 F.2d 265 (2d Cir. 1952)).  Although the sufficiency-of-the-evidence standard is highly deferential to the jury, we cannot let this deference blind us on review to the government's burden to prove guilt beyond a reasonable doubt.  Regardless of whether the jury believed Bailey or Stanford's oral testimony that Bailey did not have control over the firearm found by the police underneath Bailey's seat, the prosecution had the burden of producing sufficient evidence to convict.  The government has failed to produce evidence that Bailey had knowledge of, access to, and the intent to exert control over the gun and, therefore, has not established constructive possession.

The facts of Bailey's case are readily distinguishable from those present in *United States v. Arnold*, 486 F.3d 177 (6th Cir. 2007) (en banc), *cert. denied*, --- U.S. ---, 128 S. Ct. 871 (2008), in which this court sitting en banc found sufficient evidence to convict on a felon-in-possession charge.  In *Arnold*, a witness had called 9-1-1 minutes before the defendant's arrest to report that the defendant had threatened her with a gun. *Id.* at 181-82.  The description of the gun that the witness gave to the police officers matched that for the gun found by the officers beneath the passenger seat in which the defendant sat.  *Id.*  The fact that a witness, only minutes prior to the defendant's arrest, had seen the defendant with a gun matching the description of the one found thus proved critical to the result in *Arnold*.  The en banc decision in *Arnold* does not reject or even conflict with our long-established principle that the sufficient-evidence standard requires something more than merely the location of a firearm near the driver's seat of a car driven by the defendant.  *See, e.g.*, *United States v. Murphy*, 107 F.3d 1199, 1208 (6th

Cir. 1997) (holding that sufficient evidence existed to convict defendant on a felon-in-possession charge where the defendant was the only person in the car, the weapon was found on the seat next to the driver's seat, and the defendant made an "unsolicited disclaimer of the weapon"). Indeed, the majority opinion in *Arnold* noted that the facts in that case involved more than "[p]resence *alone*," observing "[h]ere we have 'other incriminating evidence, coupled with presence, . . . [that] serve[s] to tip the scale in favor of sufficiency." *Arnold*, 486 F.3d at 183 (quoting *Birmley*, 529 F.2d at 107-08).

By contrast with *Arnold*, in the instant case no witness saw Bailey with a gun; the requisite additional incriminating evidence is absent. Since *Arnold*, we have explained that "[w]hen the defendant is found in close proximity to a firearm at the time of the arrest, the inference of dominion and control is particularly strong, and thus the incriminating evidence needed to corroborate the conviction is less." *United States v. Grubbs*, 506 F.3d 434, 440 (6th Cir. 2007). We continue to affirm, however, that some amount of additional evidence beyond proximity is required. *Id.* at 439. The fact pattern in this case falls within the category of cases that the majority in *Arnold* distinguished, in which "the sole connection between the defendant and the gun was the gun's proximity to the defendant." *Arnold*, 486 F.3d at 183.

The mere fact that Bailey was driving the car in which the police found the firearm is not enough to establish dominion over the premises and thereby dominion and control over the firearm. In *Newsom*, we stated that "[t]he fact that [the defendant] was the only person in the SUV where the gun was found underneath his seat *supports* the conclusion that [the defendant] had the power to exercise dominion and control over the firearm." 452 F.3d at 609 (emphasis added). We immediately proceeded to state, however, that "the defendant's mere presence in a car where a gun is found and proximity to a gun are insufficient proof of constructive possession." *Id.* That the defendant drove and was the sole person in the car did not conclusively establish dominion and control over the gun within the car. To determine that the defendant had constructive possession over the firearm we required additional circumstantial evidence beyond the defendant's having driven the car in which the firearm was found. *Id.*

Likewise, our en banc opinion in *Arnold*, 486 F.3d at 183, distinguished the facts in that case from those at issue in *United States v. Hishaw*, 235 F.3d 565, 573 (10th Cir. 2000). In *Hishaw*, the Tenth Circuit affirmed the doctrine, also followed by the Fourth, Ninth, and D.C. Circuits, that "[i]n instances of joint occupancy in which the government fails to demonstrate a nexus between the defendant and the contraband, they have concluded that the government's evidence of constructive possession was insufficient." 235 F.3d at 572. Because the defendant had testified that the car he was driving belonged to his brother's friend and because "[t]he government presented no evidence to rebut this statement or to show the extent of [the defendant's] dominion . . . over the car," the Tenth Circuit concluded that the government had not established constructive possession. *Id.* By distinguishing the facts in *Hishaw* from those in *Arnold*, we demonstrated implicit agreement with the holding of *Hishaw*. Moreover, since *Arnold*, we have again endorsed the principle that "if a defendant is found with a firearm under the seat of the car he is driving, and he is the lone [occupant] of the car," those facts alone without other incriminating evidence do not establish constructive possession. *Grubbs*, 506 F.3d at 440.

Were we to hold that driving the car as its lone occupant sufficed to establish constructive possession of a firearm found underneath the driver's seat, then we would thereby institute an untenable strict-liability regime for constructive possession under 18 U.S.C. §§ 922(g)(1) and 924(c)(1)(A)(i). Imagine the following scenario: A teenager drives himself and three friends to a neighborhood party late one afternoon. The friends listen to music in the car, talk, laugh, look out the window and are generally distracted. One friend, riding in either the front passenger seat or the passenger seat directly behind the driver, slips a small firearm onto the floorboard beneath the driver's seat unbeknownst to the driver or the other passengers. When they arrive at the party, the driver and his friends get out of the car, and the driver locks the doors. Later that evening, the driver gets back into his car alone, turns on the ignition, and begins his trip home. When he rolls through a stop sign, police pull over his car for a traffic infraction, and they also ask for permission to search the vehicle. The driver thinks he has nothing to hide and consents to the search. The police discover a firearm beneath the driver's

seat.  Do we want to institute a legal rule that would mandate the conclusion that the driver has constructive possession over the firearm?  Our en banc decision in *Arnold* does not adopt such a rule, nor should we do so in this case.

Cases in which our sister circuits have found constructive possession are readily distinguishable from the instant case.  In cases involving a police officer's discovery of a firearm located on or underneath a seat of the car that the defendant drove or rode in as a passenger, courts of appeals have found sufficient evidence to establish constructive possession when there exists additional evidence beyond proximity.  Other incriminating evidence may include such evidence as a police officer's testimony that he or she saw the defendant bend down to conceal something beneath the seat, the discovery of ammunition within the control of the defendant that fits the firearm at issue, a defendant's statement to police suggesting that he had knowledge of the firearm, or the fact that the defendant not only drove the car but also had the car registered in his name. *See, e.g.*, *Jameson*, 478 F.3d at 1210 (holding that sufficient evidence existed to establish constructive possession when a sergeant had testified that the defendant made "furtive movements" in leaning forward as if to conceal an object; the firearm was in "plain view"; and the jury could infer that the defendant had placed his foot on the firearm); *United States v. Tindall*, 455 F.3d 885, 887 (8th Cir. 2006) (the defendant "was the driver and sole occupant of the car at the time of the incident, and the car had been registered to [the defendant] and his wife for more than two years prior to the arrest"), *cert. denied*, --- U.S. ---, 127 S. Ct. 1028 (2007); *United States v. Wright*, 392 F.3d 1269, 1273-74 (11th Cir. 2004) (the defendant owned the vehicle he was operating when police pulled him over and discovered the gun and the defendant "commented [to the police] that it would be 'lights out' if he made it back to the vehicle and formed a pistol with his hand," thereby indicating knowledge of the gun), *cert. denied*, 544 U.S. 968 (2005); *United States v. Liranzo*, 385 F.3d 66, 68-70 (1st Cir.) (the precarious position of the gun at a 45-degree angle indicated that someone placed the gun in that position after the car stopped; the evidence showed that none of the car's occupants but the defendant could have put the gun in position; and a police officer had seen the defendant reach underneath his seat), *cert. denied*, 543 U.S. 1013 (2004); *United States v. Jackson*, 301

F.3d 59, 64 (1st Cir. 2002) (the defendant owned the car he was driving when the police found a gun underneath his seat and the ammunition discovered on the defendant fit the gun); *Clark*, 184 F.3d at 862-63 (the defendant's "reaching actions" in the area of the floorboard where the police found the gun linked the defendant to the gun); *United States v. Gill*, 58 F.3d 334, 336-37 (7th Cir. 1995) (the defendant's clothes were piled on top of the rifle on the back seat of car occupied solely by the defendant and "the handle of the rifle was in partial view"); *United States v. Gutierrez*, 995 F.3d 169, 171-72 (9th Cir. 1993) (the police had seen "furtive" movements on the part of the defendant and had observed that "[t]he left corner of the back seat, where [the defendant] was seated, had been pulled out approximately six inches in an apparent effort to conceal a watch cap and loaded firearm").

Because the evidence in this case is limited to the fact that Bailey was driving the car in which police found the loaded gun, there exists insufficient evidence for any rational factfinder to conclude beyond a reasonable doubt that Bailey had constructive possession of the gun. We therefore vacate part III.C. of our prior panel opinion, and we reverse the district court's denial of Bailey's motion for a judgment of acquittal on the felon-in-possession count.

There also exists insufficient evidence to support Bailey's conviction under § 924(c)(1)(A)(i). To convict a defendant under this statute, the prosecution must prove that Bailey "possesse[d] a firearm," "in furtherance of" a "drug trafficking crime." § 924(c)(1)(A).

The element of the offense in dispute is Bailey's possession of the firearm. Our prior panel opinion found that four pieces of evidence were sufficient to show that Bailey possessed the firearm and that he did so in furtherance of a drug-trafficking crime: "(1) the .357 magnum was loaded; (2) it was quickly and easily accessible under Bailey's seat; (3) it was discovered in a stolen vehicle; and, (4) Stanford's testimony that she told the police that Bailey placed the gun under his seat." *Bailey*, 510 F.3d at 568. Because the district court admitted the oral and written statements that Stanford made at the scene of Bailey's arrest for impeachment purposes only, we cannot consider this

fourth piece of evidence. For the same reasons as explained above, we conclude that the location of the loaded gun under the driver's seat of a stolen vehicle driven by Bailey and Bailey's evasion of the police does not amount to sufficient evidence to prove that Bailey had actual or constructive possession of the weapon.

Once we eliminate Stanford's written and oral statements made at the time of Bailey's arrest, our decision in *United States v. Mackey*, 265 F.3d 457 (6th Cir. 2001), *cert. denied*, 534 U.S. 1097 (2002), does not support Bailey's conviction under § 924(c)(1)(A)(i). In *Mackey*, the defendant had "concede[d] that he constructively possessed the gun, but he claim[ed] that there was no evidence that the possession was 'in furtherance of' the drug crime." 265 F.3d at 460. We concluded that "for the possession to be *in furtherance of* a drug crime, the firearm must be strategically located so that it is quickly and easily available for use." *Id.* at 462 (emphasis added). We also set forth other factors relevant to determining whether a defendant possessed a weapon *in furtherance of* a crime: "whether the gun was loaded, the type of weapon, the legality of its possession, the type of drug activity conducted, and the time and circumstances under which the firearm was found." *Id.* Here, the issue is not whether a gun possessed by Bailey was so possessed in furtherance of a drug trafficking crime. Rather, the issue is the prior question of whether Bailey possessed the gun. If Bailey had conceded possession as the defendant in *Mackey* had, or if the government had produced sufficient evidence to prove possession, then the fact that the gun was loaded and located underneath Bailey's seat would likely demonstrate that Bailey possessed the gun in furtherance of his drug trafficking crime. As we explained above, however, the location of the gun and its loaded condition cannot alone show constructive possession. We therefore vacate part III.B. of our prior panel opinion, and we reverse the district court's denial of Bailey's motion for a judgment of acquittal regarding his charge under § 924(c)(1)(A)(i).

In conclusion, we **AFFIRM** Bailey's conviction under 21 U.S.C. § 841(a)(1), **REVERSE** his conviction under 18 U.S.C. § 924(c)(1)(A)(i), and **REVERSE** his conviction under 18 U.S.C. § 922(g)(1). We **VACATE** parts III.B., III.C., IV, and V of

our prior panel opinion and **REMAND** to the district court for further proceedings consistent with this opinion.

---

### DISSENTING IN PART, CONCURRING IN PART

---

GRIFFIN, Circuit Judge, dissenting in part, and concurring in part. I would deny the petition for rehearing en banc and adhere to our original disposition. Accordingly, I respectfully dissent from the portion of the amended opinion that reverses Bailey's firearm possession convictions. I concur in the portion of the amended opinion that adopts and incorporates by reference Sections I, II and III.A of our prior opinion. I join the majority in revising and amending the factual summary.

In response to defendant Bailey's pro se petition for rehearing en banc, we have supplemented the previously filed appellate record by directing counsel to furnish us with additional portions of the trial transcript not included in the Joint Appendix. (*See generally* FED. R. APP. P. 30 and former 6TH CIR. R. 30.) As the majority notes correctly, the supplemented transcript reveals, after some uncertainty, that the district court allowed Elizabeth Stanford's written and *oral* on-the-scene statements to the police to be admitted at trial only for the limited purpose of impeachment. Accordingly, we revise and amend the factual background recited in our previous opinion.

However, I disagree and respectfully dissent from the majority's holding that, after excluding all of Stanford's on-the-scene statements as substantive evidence, the evidence is insufficient for *any* rational juror to find Bailey guilty of possession of a firearm in furtherance of drug trafficking, 18 U.S.C. § 924(c)(1)(A)(i), and felon in possession of a firearm, 18 U.S.C. § 922(g)(1).[1]

In this regard, on the issues of actual or constructive possession, the majority's opinion appears more in line with Judge Moore's dissent in *United States v. Arnold*, 486 F.3d 177 (6th Cir. 2007) (en banc), than with the majority en banc *Arnold* opinion. I believe, however, that when the principles of the *Arnold* majority decision are properly

---

[1] Bailey's conviction of possession with intent to distribute five grams or more of crack cocaine, 21 U.S.C. § 841(a)(1), and 360-month sentence are unaffected by the majority's amended opinion.

applied to the case at bar, any rational trier of fact could have found the essential elements of the crimes proved beyond a reasonable doubt based upon the evidence admitted at trial. Bailey fled from the police in a stolen vehicle that he operated and controlled. At the time, Bailey possessed crack cocaine with the intent to distribute. The owner of the car testified that she did not own a handgun and that there was no handgun in the car at the time it was stolen. Finally, the police discovered a loaded and unholstered .357-magnum revolver within Bailey's reach underneath his driver's seat.

It is well settled that, on appeal, a defendant challenging the sufficiency of the evidence bears a "very heavy burden." *United States v. Chavis*, 296 F.3d 450, 455 (6th Cir. 2002) (citing *United States v. Tocco*, 200 F.3d 401, 424 (6th Cir. 2000)). Specifically, "[w]hen reviewing an insufficient-evidence claim, this court must decide whether, after viewing the evidence in a light most favorable to the government, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007) (emphasis added) (citing *United States v. Humphrey*, 279 F.3d 372, 378 (6th Cir. 2002); *United States v. Gibbs*, 182 F.3d 408, 421 (6th Cir. 1999)). *See also Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

In applying this standard, we do not "weigh the evidence, consider the credibility of witnesses, or substitute [our] judgment for that of the jury." *United States v. Ferguson*, 23 F.3d 135, 140 (6th Cir. 1994). We will reverse a judgment on insufficiency-of-the-evidence grounds "'only if [the] judgment is not supported by substantial and competent evidence upon the record as a whole.'" *United States v. Barnett*, 398 F.3d 516, 522 (6th Cir. 2005) (quoting *United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984)). "If the evidence, however, is such that a rational fact finder must conclude that a reasonable doubt is raised, this court is obligated to reverse a denial of an acquittal motion." *United States v. Lloyd*, 10 F.3d 1197, 1210 (6th Cir. 1993) (citing *United States v. Collon*, 426 F.2d 939, 942 (6th Cir. 1970)).

We have held that a defendant's mere presence near a firearm is not enough to show constructive possession, *Arnold*, 486 F.3d at 183; *see also Parker v. Renico*, 506

F.3d 444, 449-50 (6th Cir. 2007). However, proximity coupled with other incriminating evidence may "'show the requisite knowledge, power, or intention to exercise control over' the gun to prove constructive possession." *Arnold*, 486 F.3d at 183 (quoting *United States v. Birmley*, 529 F.2d 103, 107-08 (6th Cir. 1976)). Consequently, proximity plus "evidence of some other factor" such as "proof of motive" may suffice to establish constructive possession. *United States v. Mayberry*, 540 F.3d 506, 514 (6th Cir. 2008) (quoting *United States v. Alexander*, 331 F.3d 116, 127 (D.C. Cir. 2003)) (internal quotation marks omitted).

We recently applied this rationale in *United States v. Castano*, 543 F.3d 826 (6th Cir. 2008). In *Castano*, the police stopped the defendant while he was driving a truck with his girlfriend, who was riding in the passenger seat. A search of the vehicle revealed a box containing marijuana in the truck bed and a loaded .44-caliber Smith & Wesson revolver discovered "in the truck's center console, positioned within easy reach of the driver." *Id*. at 828. The defendant argued that the government did not introduce sufficient evidence to establish that he had constructive possession of the firearm. Specifically, he asserted that the government failed to show that he knew the gun was present in the vehicle. *Id*. at 837-38. At trial, several officers testified regarding "the frequency of finding firearms when making arrests for drug trafficking offenses and about the need for drug traffickers to protect themselves." *Id*. at 838. On appeal, we noted that drugs were found in the truck in close proximity to the defendant and that the defendant pleaded guilty to possession of marijuana with intent to distribute. Ultimately, we affirmed the defendant's § 922(g) conviction, concluding that the "evidence demonstrated that Castano had a strong motive to possess a firearm to protect himself and his drugs during the planned drug transaction . . . ." *Id*.

There are clear parallels between *Castano* and the case at bar. Both cases involved possession with intent to distribute illegal drugs, and police officers testified in each case regarding the proclivity of drug dealers to carry firearms. Thus, the defendants had the same motive to carry a firearm – as protection during their illegal drug-distribution activities. *See United States v. Rhodes*, 2008 WL 4809488, *2 (6th Cir.

Nov. 5, 2008) (unpublished) ("the drugs provided a motive for possessing the ammunition: protecting the drug stash."); *United States v. Hardin*, 248 F.3d 489, 499 (6th Cir. 2001) ("This Court has held many times that guns are 'tools of the trade' in drug transactions.").

Significantly, Bailey fled when a police officer identified the stolen car and attempted to stop him. As previously noted, it is well established that proximity to a firearm, when accompanied by some other factor such as "proof of motive, a gesture implying control, *evasive conduct*, or a statement indicating involvement in an enterprise," may be sufficient to demonstrate constructive possession. *United States v. Newsom*, 452 F.3d 593, 610 (6th Cir. 2006) (emphasis added) (quoting *Alexander*, 331 F.3d at 127). Flight from the police certainly qualifies as "evasive conduct." *See United States v. Newland*, 243 F. App'x 151, 154 (6th Cir. 2007) (rejecting a challenge to the sufficiency of the evidence based on proximity to the firearm coupled with, *inter alia*, fleeing from the police). As we explained in *United States v. Motley*, 93 F. App'x 898 (6th Cir. 2004)[2]:

> Motley contends that there was insufficient evidence to support his conviction on Count Two of the indictment, which charged him with being a felon in possession of a firearm on October 8, 1999. We use a deferential standard to review this claim. The test is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We are unpersuaded by Motley's arguments that no physical evidence – such as a fingerprint – was introduced to link him to the gun found in the car he was driving and that the only evidence linking him to the weapon was his mere presence in the car. Evidence of constructive possession suffices to satisfy the requirement of proof that a defendant possessed a firearm, *United States v. Clemis*, 11 F.3d 597, 601 (6th Cir. 1993), and "[c]ircumstantial evidence by itself can support a defendant's conviction." *United States v. Copeland*, 321 F.3d 582, 600 (6th Cir. 2003). "Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention

---

[2]Unpublished opinions of this court are not precedentially binding under the doctrine of stare decisis, but may be considered for their persuasive value. *United States v. Lancaster*, 501 F.3d 673, 677 (6th Cir. 2007), and *United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007).

at a given time to exercise dominion and control over an object, either directly or through others." *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998).

Motley's mere proximity to the firearm does not, without more, constitute probative evidence that he was in constructive possession of the weapon.  But in this case, the jury had more than Motley's mere proximity to the weapon to consider.  *It is undisputed that Motley was driving the car, and proof that a defendant "has dominion over the premises where the firearm is located" contributes to a finding of constructive possession. Clemis, 11 F.3d at 601.  Furthermore, the jury heard testimony that when police officers pulled up behind Motley on October 8, 1999, he tried to evade them by turning a corner at high speed, pulling into a stranger's driveway, exiting the car, and attempting to flee.  Because Motley was the driver, the jury was permitted to infer that it was his decision to take evasive action, and the jury could consider such action probative of his possession of the gun.*  Finally, the jury heard evidence that . . . when police officers searched Motley's bedroom . . . they found a holster and ammunition clip matching the pistol found in the car.  Cumulatively, the incriminating evidence just described constitutes sufficient evidence for a reasonable juror to convict Motley on Count Two of the indictment.

*Motley*, 93 F. App'x at 900-01 (emphasis added).

In the present case, the majority endeavors to discount Bailey's evasive conduct: "[t]he attempt to evade arrest, however, proves little because Bailey might well have taken this action in an effort to evade detection of the two bags of crack cocaine found in his pants." (Maj. Op. at 7.)  While this "might" have been Bailey's motivation, it is equally – if not more – reasonable to conclude that Bailey was fleeing because of the firearm or because of both the firearm and the crack cocaine.  Regardless, Bailey's motivation for his flight is a question for the jury, and a rational trier of fact could conclude that the firearm contributed to Bailey's decision to flee from the police.  *See United States v. Coffee*, 434 F.3d 887, 895-96 (6th Cir. 2006) ("it is not necessary that such evidence remove every reasonable hypothesis except that of guilt.").

Viewing the evidence in the light most favorable to the prosecution, as we are required to do, *Arnold*, 486 F.3d at 180, *United States v. Grubbs*, 506 F.3d 434, 438 (6th Cir. 2007), we assume that the jury credited the car owner's unrebutted testimony.  Therefore, the jury made the logical and reasonable inference that because there was not

a handgun in the car before it was stolen, but there was a loaded handgun in the car when Bailey was arrested, Bailey possessed the firearm found underneath his seat.  As we emphasized in *Arnold*, "[t]he critical point is that the jury could have drawn different inferences from this evidence, and our mandate is to affirm when the jury's choice was a rational one – which it was here." *Arnold*, 486 F.3d at 182.  Under the circumstances, "we must respect the jury's inferences over our own." *Id.*

The majority also believes that it is "[o]f particular significance" that "the government could not show that Bailey's fingerprints were on the gun," (Maj. Op. at 7), but cites to no authority requiring fingerprints to establish possession.  Indeed, we specifically rejected this requirement in *Motley* and in *Arnold*:  "Because 'possession may be proved by direct or circumstantial evidence,' *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973), we cannot overturn the jury's decision merely because it had to draw reasonable inferences to find Arnold guilty." *Arnold*, 486 F.3d at 181.  *See also United States v. Campbell*, — F.3d —, 2008 WL 5060374, *6 (6th Cir. Dec. 2, 2008) ("When engaged in this analysis, we are bound to make all reasonable inferences and credibility choices in support of the verdict."); *United States v. Kimbrel*, 532 F.3d 461, 465 (6th Cir. 2008) ("the government may indeed prove possession of a firearm by circumstantial evidence") (citing *Arnold*, 486 F.3d at 181).

Having concluded that there was sufficient evidence to sustain Bailey's conviction for being a felon-in-possession of a firearm, I would also affirm his conviction for possession of a firearm in furtherance of drug trafficking.  The majority concedes that if Bailey possessed the gun, "then the fact that the gun was loaded and located underneath Bailey's seat would likely demonstrate that Bailey possessed the gun in furtherance of his drug trafficking crime." (Maj. Op. at 13.)  As explained above, I believe the evidence was sufficient for a rational trier of fact to conclude that Bailey possessed the gun, and I agree with the majority that the location of the gun would allow the jury to conclude that it was used in furtherance of drug trafficking.

It is worth noting that the district court sentenced Bailey to 60 months of incarceration for being a felon in possession of a firearm and 120 months of

incarceration for possession of a firearm in furtherance of a drug trafficking crime. However, this combined 180-month sentence was to be served *concurrently* with Bailey's 360-month sentence for possession of crack cocaine with intent to distribute. The majority opinion affirms Bailey's cocaine charge. Therefore, on remand, the district court will presumably reimpose its 360-month sentence for possession with intent to distribute crack cocaine, and Bailey will continue his 360 months of incarceration.

For these reasons, I respectfully concur in part and dissent in part.