NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0066n.06

No. 06-6546

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| JERRY SAMPSON SPENCER, | ) | |
| | ) | |
| Defendant-Appellant. | ) | **O P I N I O N** |
| | ) | |

Before: GIBBONS, SUTTON, and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** A jury convicted defendant Jerry Sampson Spencer of three counts of distributing a controlled substance, 21 U.S.C. § 841(a)(1), four counts of intentionally possessing with the intent to distribute a controlled substance, 21 U.S.C. § 841(a)(1), and possessing a firearm after having been convicted of a crime punishable by imprisonment for a term exceeding one year (felon in possession of a firearm), 18 U.S.C. § 922(g)(1). The district court denied Spencer's motion for judgment of acquittal on the felon in possession of a firearm count, and sentenced him to 58 months' imprisonment.[1] Spencer appeals, challenging the sufficiency of the evidence on the felon in possession of a firearm count. We AFFIRM.

**I**

---

[1] The court sentenced Spencer to 58 months on seven of the counts, including the felon in possession of a firearm count, and to 36 months on count 7 (possession with intent to distribute Xanax), all terms to be served concurrently.

A paid undercover informant working with Operation UNITE[2], a drug task force, testified that he purchased drugs from Spencer at Spencer's residence three times in July 2005. At the first buy on July 2, 2005, Spencer and his wife were present. The informant entered the residence through the front door into the living room, where he observed a gun cabinet made of glass that contained rifles, including one with a scope. Spencer sold him four Lortabs in the kitchen. The second buy, on July 5, 2005, was of methadone and took place in the master bedroom, where the informant observed a couple of shotguns and a pistol on the night stand. The informant testified he could not recall whether anyone other than Spencer was present during the second buy. At the third buy, on July 14, 2005, Spencer and his wife were present. Spencer retrieved Tylox capsules from a small bag and sold them to the informant in the kitchen. When asked whether he observed firearms during the third buy, the informant testified that he had not paid attention.

Later on July 14, 2005, UNITE detectives executed a search warrant at Spencer's residence. Spencer was outside the residence with another man, Dustin Spaulding, moving a refrigerator. Detectives searched Spaulding and found nothing on him. Spencer's wallet contained over $5,000 cash. Detective Keith Napier searched the kitchen and located a mesh bag on the kitchen table that contained numerous pills, including 100 Tylox pills, 55 Hydrocodone pills, as well as 14 Fentanyl patches, unlabeled prescription bottles and two bags of marijuana. A digital scale was found on the kitchen stove.

---

[2]"UNITE" stands for Unlawful Narcotics Investigations, Treatment and Education.

Detective Craig Burch, who had obtained the deed for the residence, searched the master bedroom. Burch testified that a Marlin .22 caliber rifle was leaning against a master bedroom wall and that he found 525 .22 caliber rounds in an open box in the night stand. Men's and women's clothing, and adult magazines, were strewn around the master bedroom, but no children's clothes. Burch testified that he also walked through the entire residence and found a Marlin .22 caliber long semi-automatic rifle in the upstairs hallway next to the stairs leading to the basement, and three shotguns in the basement: a Stevens 9478 single-shot 12-gauge shotgun; a Harrington & Richardson model 58 410-gauge shotgun; and a New England Firearms model SB1 20-gauge shotgun. A round of 410-shotgun ammunition was found in the basement–apart from that, all the ammunition was found in the master bedroom. Bureau of Alcohol, Tobacco and Firearms Special Agent Teal testified that each of the five firearms seized functioned as designed. Teal had to take one of the .22 caliber rifles to a specialist to remove the trigger lock before he could function test it. Teal testified that the different types of ammunition recovered during the search included ammunition that would have worked in all but one of the firearms. Bureau of Alcohol, Tobacco and Firearms agent Hicks, an expert witness regarding trafficking of controlled substances, testified that the controlled substances located at the residence were consistent with distribution rather than personal use, and that the presence of firearms was typical in trafficking cases for protection of drugs and money.

The district court denied Spencer's motion for directed verdict on the felon in possession of a firearm count. The defense called no witnesses.

**II**

We review *de novo* the district court's denial of Spencer's motion for a judgment of acquittal, and must determine "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Humphrey*, 279 F.3d 372, 378 (6th Cir. 2002) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006) (quoting *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999)).

To sustain a conviction of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1), the Government must prove beyond a reasonable doubt:  1) that the defendant has a prior conviction for a crime punishable by imprisonment for a term exceeding one year; 2) that the defendant thereafter knowingly possessed the firearm and ammunition specified in the indictment; and 3) that the possession was in or affecting interstate commerce. *United States v. Schreane*, 331 F. 3d 548, 560 (6th Cir. 2003).

Only the element of possession is in dispute in the instant case.[3]  Actual or constructive possession is sufficient to give rise to criminal liability under § 922(g)(1). *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008).  "Constructive possession exists when a person does not have possession but instead knowingly has the power and intention at a given time to exercise dominion

---

[3]The parties stipulated to Spencer's status as a convicted felon, R. 51, p. 100-01, and Spencer does not dispute that the five firearms were manufactured outside the state of Kentucky, as testified to by Bureau of Alcohol, Tobacco and Firearms Special Agent Jesse Hooker, R. 52, p. 88.

and control over an object, either directly or through others." *United States v. Grubbs*, 506 F.3d 434, 439 (6th Cir. 2007) (quoting *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973)). Proof that a person has dominion over the premises where the firearm is located is sufficient to establish constructive possession. *United States v. Bailey*, 553 F.3d 940, 944 (6th Cir. 2009). Where a defendant is in nonexclusive possession of premises in which illicit contraband is found, it cannot be inferred that he knew such contraband was present and had control of it unless there are other incriminating statements or circumstances tending to buttress such an inference. *Id.* at 945 n.3.

Spencer asserts that no rational trier of fact could have found him to be in either actual or constructive possession of the firearms. We disagree.

Spencer owned the home where the firearms were found. The informant observed a gun cabinet containing rifles in the living room when he was at Spencer's residence on July 2, 2005 to purchase drugs. The informant was shown a photograph of the rifle found in the master bedroom during the execution of the search warrant and testified that it was one of the rifles he observed in the gun cabinet. Only Spencer and his wife were present at the residence on that date. The informant also observed shotguns and a pistol in the master bedroom on July 5, 2005, when he bought drugs from Spencer in the master bedroom. Five firearms were seized from the home on July 14, 2005. One of the firearms and all but one round of ammunition were found in the master bedroom, along with other personal items including men's and women's clothing, adult magazines and a prescription bottle. Spencer did not contend that the personal items were not his. Although the firearms were not

5

loaded when the search warrant was executed, ammunition for four of the five firearms was accessible in the master bedroom.[4]

All the evidence supported the reasonable inference that Spencer had knowledge of, and dominion and control over the firearms. No evidence supported an inference that they belonged to his children, and the most generous inference in Spencer's favor would be that he possessed the firearms jointly with his wife.

We conclude that the district court properly denied Spencer's motion for acquittal, as there was sufficient evidence to support a finding that Spencer constructively possessed the firearms specified in the indictment. We AFFIRM.

---

[4]The facts in *United States v. Bailey*, 553 F.3d 940 (6th Cir. 2009), on which Spencer relies, stand in stark contrast to the instant case. After evading the police, Bailey was stopped while driving a stolen car and a loaded gun was found underneath his seat. Bailey testified at trial that he was unaware of the gun, had not put a gun inside the car, and did not have a gun on his person when he got in the car. There were no fingerprints on the gun and other persons had used the car on the night of Bailey's arrest and in the preceding days. *Id.* at 946-47. This court found the evidence insufficient to support the jury's verdict, noting that "[t]he mere fact that Bailey was driving the car in which the police found the firearm is not enough to establish dominion over the premises and thereby dominion and control over the firearm." *Id.* at 947.