NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0300n.06

No. 23-1774

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Jul 12, 2024
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| JEMARION TREVON FLOWERS, | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) ) | OPINION |
| | ) | |

Before: GRIFFIN, NALBANDIAN, and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. When the police arrested Jemarion Flowers, he was in the front passenger's seat of a car. A loaded Glock 9mm pistol was on the floor in front of the empty driver's seat next to him. Bags of methamphetamine and fentanyl were also in the car. Flowers was already known to law enforcement. He had sold drugs on multiple occasions to an undercover officer and had also asked the officer repeatedly for a gun. Given all this, Flowers was indicted on multiple charges. He pleaded guilty to a single charge of distributing drugs. At sentencing, the district court applied an enhancement for possessing a dangerous weapon while distributing drugs. On appeal, Flowers challenges the dangerous-weapon enhancement. But on these facts, it was not clear error for the district court to conclude Flowers constructively possessed the Glock as part of the conduct relevant to his drug-distribution offense. So we affirm.

**BACKGROUND**

We draw these facts from the presentence report, as Flowers does not object to them. *See United States v. Doyle*, 711 F.3d 729, 731 (6th Cir. 2013) (citing *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc)).

Police received a tip from an informant that Flowers was selling methamphetamine and heroin in northern Michigan. The informant gave the officers Flowers's phone number. An undercover officer pretending to be part of a biker gang contacted Flowers to arrange a controlled drug buy. Flowers sold the undercover officer 27.74 grams of methamphetamine. Afterwards, Flowers texted the undercover officer to request "that they were 'lock in,'" meaning Flowers wished to be the undercover officer's primary source of drugs. Sealed Presentence Report, R. 32, PageID 102. Over the next months, the undercover officer maintained communication with Flowers, arranging three more controlled buys of methamphetamine and fentanyl. Over the course of their communications, Flowers asked the undercover officer three times to source a gun for him. In one instance, Flowers asked specifically for a "Glock." Sent'g Tr., R. 44, PageID 235.

On December 6, 2022, about a week after the third controlled buy (but before the fourth), police officers in Muskegon, Michigan responded to a shooting. A witness told the Muskegon officers that the persons possibly responsible for the shooting were in a sedan that could have been a Saturn or a Chevrolet Malibu. The officers located a Chevrolet Malibu a few blocks away. When they pulled up, Flowers was sitting in the front passenger's seat. Nobody was in the driver's seat, and two individuals were sitting in the back. Police dash and bodycam footage shows that when police cars approached the Chevrolet, Flowers got out of the passenger's seat and started to walk away from the car. When an officer told Flowers to return to the vehicle, he turned around and returned to the Chevrolet. Just after he reentered the passenger's seat, Flowers appeared to start

reaching for something inside the car. The police then ordered Flowers to get out of the car so they could arrest and handcuff him. An officer's bodycam footage shows that Flowers held an empty green ammunition case in his hand as the officer pulled him out of the car to be handcuffed.

Officers searching the car found a loaded Glock 9mm pistol with a high-capacity magazine on the floorboard of the car in front of the driver's seat and a live round of 9mm ammunition in the area around the front passenger's seat. There were two other firearms—another 9mm and a .40 caliber—under the driver's seat, a location that would have been only accessible to the rear-seat passengers. Police also found a bag of fentanyl on the front passenger's seat floorboard, and a bag of methamphetamine in the center console. There was Oxycodone, marijuana, and $396 in cash on Flowers's person.

After that arrest, Flowers participated in a fourth controlled buy.[1] Based on the controlled buys and the Muskegon arrest, Flowers was indicted by a grand jury in the Western District of Michigan on five counts of various drug crimes and one count of being a felon in possession of a firearm. As part of an agreement with the government, Flowers pleaded guilty to one count of distributing fifty grams or more of methamphetamine and fentanyl in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(viii), and 841(b)(1)(C). The government dropped the four other drug charges and the felon-in-possession charge in exchange for Flowers's plea, though the parties agreed that the court could consider the dropped charges in calculating the appropriate Guidelines range.

At the sentencing hearing, the government defended the presentence report's recommendation for the court to apply a two-level enhancement to Flowers's total offense level because he possessed a dangerous weapon—the Glock on the driver's seat floorboard—during his

---

[1] Flowers was released on bond on December 19, 2022.

commission of the drug distribution offense. *See* United States Sent'g Comm'n, Guidelines Manual § 2D1.1(b)(1) (2021) ("U.S.S.G."). In support of applying the enhancement, the government called officers involved in the drug investigation and in Flowers's arrest in the Chevrolet. The officer who participated in the undercover controlled buys testified that Flowers asked him for a gun on three separate occasions. Once, Flowers specified that he was seeking a Glock. Another officer testified that texts recovered from Flowers's phone showed that on the day the officers arrested him in the Chevrolet with the gun, he was texting with someone else about obtaining a Glock. The Muskegon officer who arrested Flowers in the Chevrolet also testified, commenting on the dash and bodycam footage of the incident. The officer recounted that Flowers rummaged around in the vehicle after he reentered the car and that officers later found a Glock on the driver's seat floorboard; additionally, the bodycam showed that Flowers had an ammunition case in his hand when the officer pulled him out of the car to handcuff him. After considering this testimony and the parties' arguments, the district court determined "the circumstances overwhelmingly support[ed] a finding" that Flowers constructively possessed the Glock. Sent'g Tr., R. 44, PageID 283. And it further concluded that Flowers's possession related to his drug distribution, so the court applied the dangerous-weapon enhancement.

Given Flowers's offense level and criminal history, his Guidelines range was 135 to 168 months' imprisonment. The district court granted Flowers's motion for a downward variance and sentenced him to 100 months' imprisonment followed by four years of supervised release. This timely appeal followed.

## DISCUSSION

On appeal, Flowers challenges only the district court's application of the dangerous-weapon enhancement. This enhancement applies when the defendant possesses a firearm in

connection with his offense of conviction. *See United States v. Minter*, 80 F.4th 753, 760 (6th Cir. 2023) (citing U.S.S.G. § 2D1.1(b)(1)). The parties agree that the court's determination that Flowers possessed the firearm during the commission of the drug offense of conviction is a factual finding we review for clear error. *See United States v. McCloud*, 935 F.3d 527, 530–31 (6th Cir. 2019). The district court did not clearly err in determining that Flowers (1) constructively possessed the gun (2) in connection with the drug offense he pleaded guilty to.

*Possession.* To trigger the dangerous-weapon enhancement, the government first had to prove by a preponderance of the evidence that Flowers possessed the Glock on the night he was arrested. *See Minter*, 80 F.4th at 760. Since no evidence shows that Flowers ever held the Glock or otherwise physically controlled it, the government needed to show that he had "constructive possession" of the gun. *United States v. Bailey*, 553 F.3d 940, 944 (6th Cir. 2009) (citation omitted). Flowers constructively possessed the Glock if he "knowingly ha[d] the power and the intention to exercise dominion and control over" it. *Minter*, 80 F.4th at 760 (quoting *Bailey*, 553 F.3d at 944) (alteration and emphases omitted).

We first consider whether Flowers knowingly had the *ability* to exercise control over the Glock. The district court found that from Flowers's position in the front passenger's seat of the car, the Glock lay in "easy reach" on the floorboard of the seat next to him. Sent'g Tr., R. 44, PageID 284. And Flowers was also the only person in the car with the "power . . . to exercise . . . control" over the gun by quickly reaching over to grab it. *Minter*, 80 F.4th at 760 (quoting *Bailey*, 553 F.3d at 944). The bodycam footage from one of the arresting officers shows that the interior lights of the car were on while Flowers was inside. It is reasonable to assume that the lights would've illuminated the Glock in the footwell and that Flowers would've seen it there. What's more, it is valid to infer that Flowers knew that there was a 9mm Glock within his reach that

matched the caliber of the live 9mm round that was in the passenger's seat he occupied. That inference grows stronger when paired with Flowers holding the ammunition case when the police removed him from the vehicle. The district court did not clearly err in concluding Flowers knowingly had the power to control the firearm.

We next consider whether Flowers knowingly had the *intention* to exercise control over the Glock. Flowers had asked the undercover officer to buy a Glock, and he received information about a Glock from another person on the day that he was arrested. These text messages show that as a theoretical matter, he wanted a Glock. From this general intent and from the fact that Flowers was an active drug dealer with cash on him and distributable quantities of fentanyl and methamphetamine in the car, it could be inferred that Flowers had the specific intent to exercise control over the loaded Glock that lay within his reach. It was reasonable for the district court to rely on Flowers's text messages and the other factual circumstances to conclude Flowers knowingly intended to control the Glock on the floor of the Chevrolet. That showing of intent, combined with Flowers's knowing ability to control the firearm, satisfy us that the district court did not clearly err when it found that Flowers constructively possessed the Glock.

Flowers argues that the factual circumstances of his arrest in the Chevrolet fail to prove he possessed the Glock. Specifically, he points out that the government never showed he owned or drove the car, that none of the footage of the incident shows Flowers moved a gun onto the driver's seat floorboard, that he never said he knew about the gun there, and that neither the live 9mm round nor the empty ammunition case necessarily connect him to the Glock. But the government did not need to prove any of these things to show that Flowers constructively possessed the firearm. And none of them negate the implications of Flowers's conversations about obtaining a Glock, nor do they account for the fact that the gun on the driver's seat floorboard was illuminated and in

Flowers's "easy reach." It is those facts that, on our clear error review, sufficiently support the conclusion that Flowers knowingly had the "power and the intention to exercise dominion and control" over the Glock. *Minter*, 80 F.4th at 760 (alteration and emphasis omitted) (quoting *Bailey*, 553 F.3d at 944).

Relatedly, Flowers cites to *United States v. Bailey* for the proposition that a person's presence in a car with a gun doesn't suffice to show he constructively possessed it. *See* 553 F.3d at 944. It's true that in *Bailey* we explained that "nonexclusive possession [of a car] does not establish 'dominion over the premises' sufficient to show constructive possession [of a gun in the car]." *Id.* at 944 n.3; *accord United States v. Arnold*, 486 F.3d 177, 183 (6th Cir. 2007) (en banc). It's also true that Flowers was not in exclusive possession of the Chevrolet—there were passengers in the back. On that basis, Flowers submits that the district court erred because it "relied on [his] presence in the car to conclude that he constructively possessed the firearm." Appellant Br. at 17.

Flowers's argument is unconvincing for several reasons. First, he mischaracterizes the district court's analysis. The court's reasoning did not rest on Flowers's presence in the car, but on the fact that the Glock was easily within Flowers's reach. Indeed, the court did not find that Flowers was in constructive possession of the two guns that were underneath the driver's seat; it noted that only the rear-seat passengers could reach those. Second, *Bailey*'s facts are materially different. There, the government hadn't established that the defendant knew about a gun hidden underneath the seat of a borrowed car he was driving, so we concluded it hadn't proven constructive possession beyond a reasonable doubt. *Bailey*, 553 F.3d at 945–46. Here, though, the Glock was visible to Flowers and within his "easy reach," and Flowers's text messages show that he was interested in buying a Glock on the day he was arrested next to one. There was no

comparably strong evidence in *Bailey* to establish the defendant's knowing access to and intent to exercise control over the gun. *Id*. In short, *Bailey* does not alter our conclusion.

*Connection to offense.* The second showing the government had to make for the dangerous-weapon enhancement to apply is that Flowers's possession of the Glock was related to the drug offense for which he was convicted. *See Minter*, 80 F.4th at 760. Flowers argues that even if he did constructively possess the firearm, the government hasn't connected it to his conviction for distributing drugs. We reject this argument as well.

Once the government has proven by a preponderance of the evidence that a defendant constructively possessed a firearm during the commission of an offense or other "relevant conduct," it is entitled to a rebuttable presumption that the firearm was related to the offense. *McCloud*, 935 F.3d at 531–32 (citation omitted). And the district court did not clearly err when it found that Flowers's conduct on the night of his offense was related to distributing drugs. Flowers was arrested with the Glock during the weeks between the third and fourth controlled drug purchases. At the time of his arrest, Flowers had $396 in cash on him. Drugs of the same type that he sold to the undercover officer—fentanyl and methamphetamine—were in the car where he was sitting. It was reasonable under these circumstances for the district court to determine Flowers was distributing these drugs. This is so even though the quantities in the Chevrolet were smaller than the bulk quantities he sold to the undercover officer. *Cf. id*. at 532–33 (affirming where district court found distributing marijuana relevant conduct to conviction for distributing methamphetamine). Once the court determined Flowers was distributing fentanyl and methamphetamine when he was arrested with the Glock, it correctly applied the presumption that the Glock was connected to the conduct of his offense.

Flowers offers no persuasive rejoinder. He claims that he did not constructively possess the fentanyl and methamphetamine that were found close to the front passenger seat of the Chevrolet. We disagree for the same reasons that show Flowers constructively possessed the Glock—he admittedly distributed drugs, and the drugs were within his "easy reach." Flowers alternatively argues that these drugs could have been for personal use. But Flowers denied using any narcotics besides marijuana and painkillers when he was arrested with these drugs and during his interview with the probation officer who prepared the presentence report. It is reasonable to infer that Flowers did not intend to consume the fentanyl and methamphetamine, but instead to sell it. Finally, as discussed, once the district court had concluded that Flowers possessed the Glock while distributing drugs, there was a rebuttable presumption that the Glock was connected to his underlying offense of conviction. *See Minter*, 80 F.4th at 760. Flowers makes no attempt to rebut that presumption. It was not clear error for the district court to apply the dangerous-weapon enhancement in these circumstances.

## CONCLUSION

We affirm the district court's sentence.