IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
April 23, 2024 Session

## STATE OF TENNESSEE v. CHRISTOPHER JOE WHALEY

**Appeal from the Circuit Court for Sevier County**
**No. 28004-III          Rex Henry Ogle, Judge**

_____

**No. E2023-01099-CCA-R3-CD**
_____

A Sevier County jury found the defendant, Christopher Joe Whaley, guilty of possession of a firearm by a convicted felon, possession of drug paraphernalia, and a seatbelt violation for which he received an effective sentence of sixteen years in confinement. On appeal, the defendant contends the evidence presented at trial was insufficient to support his conviction; the trial court erred in sentencing; and the judgments entered were incorrect and failed to properly award the defendant his pretrial jail credit. Upon our review of the record, the parties' briefs, and oral arguments, we affirm the defendant's convictions and sentences, but remand for the determination by the trial court as to whether the defendant is entitled to pretrial jail credit and for entry of corrected judgments in Counts 2 and 4.

**Tenn. R. App. P. 3 Appeal; Judgments of the Circuit Court Affirmed in Part and Remanded in Part**

J. ROSS DYER, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Bryan W. McKenzie, Sevierville, Tennessee, (on appeal) and T.J. Norton, Sevierville, Tennessee, (at trial) for the appellant, Christopher Joe Whaley.

Jonathan Skrmetti, Attorney General and Reporter; Abigail H. Rinard, Assistant Attorney General; Jimmy Dunn, District Attorney General; and Barry Williams, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Facts and Procedural History*

## I.    Evidence Presented at Trial

On September 26, 2020, Sevierville Police Officer Kyle Hager was on patrol in Sevier County, Tennessee, when he observed the defendant, driving a gold Dodge truck, moving erratically or "geeking" inside the vehicle, and not wearing his seatbelt.  Officer Hager explained that "geeking" is a term used to reference the rigid movements of someone who cannot control their body due to methamphetamine use.  As a result of his observations, Officer Hager activated his blue lights and initiated a traffic stop.

The defendant did not pull over immediately but proceeded to "slow roll," an act perceived by Officer Hager as someone "thinking about what their next action is going to be."  After several minutes, the defendant turned off the main road and into a parking lot, parking diagonally across a parking space.  Officer Hager testified that his dashboard camera recorded the traffic stop, as well as thirty seconds prior to his patrol lights being activated.  His body camera was also turned on and working properly.  The footage from his body camera was entered as an exhibit and played for the jury.

Officer Hager approached the defendant's vehicle, made contact, and requested the defendant's license, registration, and proof of insurance.  In response, the defendant mumbled in a very low volume and fumbled with several pieces of paper.  The defendant also spoke in intermittent words, not in coherent sentences.  Officer Hager testified that he had almost daily interactions with drug and narcotics cases and that the defendant's actions were consistent with intoxication or use of a stimulant such as methamphetamine.

During this time, Sevierville Police Officer Jordan Paul also observed the defendant's erratic movements while on patrol and followed Officer Hager as back-up. Officer Paul testified that he had received academy training on DUI investigations, advanced training for field sobriety tests, and was a canine handler.  Officer Paul's canine was certified in narcotic detection.  Officer Paul concluded, based on his training and experience, that the defendant's uncontrollable, erratic movements were consistent with methamphetamine use.

After the defendant exited the vehicle, Officer Paul asked for consent to search the truck, which the defendant denied.  Officer Paul used his canine to do a peripheral search of the vehicle which yielded a positive alert for narcotics, leading to a full search of the defendant's vehicle.  Officer Hager testified that he found several bullets on the driver's side of the vehicle in the door and in the floorboard, which was significant because, "where there's bullets, there's likely going to be a gun."  Officer Hager also discovered multiple, used and uncapped syringes.  While searching the passenger side of the vehicle, Officer Paul discovered a loaded firearm inside a backpack in the floorboard.  The backpack also contained an uncapped, used syringe with blood on it.  Blood was also found on the interior

of the vehicle. Officer Hager estimated the backpack would have been 18 inches to 2 feet away from the defendant while he was in the vehicle.

After learning there was a warrant for the defendant's arrest for violating his probation in Jefferson County, Officer Hager took the defendant into custody. Once the defendant was placed in the patrol vehicle, he became agitated. In order to deescalate the situation, Officer Hager engaged the defendant in conversation, during which the defendant stated, "if he had ever been pulled over by the police, he had made it up in his mind that he was either going to evade arrest or he was going to shoot himself." The defendant was then escorted to the Sevier County jail.

On cross-examination, Officers Hager and Paul confirmed that they had not administered a field sobriety test to the defendant. They also testified that the black backpack containing the firearm was not readily identifiable as belonging to the defendant. In addition, Officer Hager confirmed that he had not run a fingerprint analysis on the firearm during his investigation, explaining that the defendant was the "sole person within the vehicle and he had possession of the vehicle."

The defendant elected not to offer evidence.

At the conclusion of trial, the State agreed to dismiss the charge of Altered License Plate (count 2), Tennessee Code Annotated § 55-5-116.

After reviewing the evidence, the jury found the defendant guilty of Felon in Possession of a Firearm (count 1), Tennessee Code Annotated § 39-17-1307, Possession of Drug Paraphernalia (count 3), Tennessee Code Annotated § 39-17-425, and Seatbelt Violation (count 5), Tennessee Code Annotated § 55-9-603. The defendant was acquitted of the charge of Registration Violation (count 4), Tennessee Code Annotated § 55-4-110.

## II.    Sentencing Hearing

In November 2021, prior to the sentencing hearing, the State filed a "Notice to Seek Enhancement in Punishment," claiming the defendant was a "Persistent Offender" and seeking an enhanced sentence based on the defendant's additional convictions and to classify the defendant as a Range III offender. The defendant objected to the Range III classification. In September 2022, the State filed a second Notice, repeating its intention to seek an enhanced sentence based upon the defendant's conviction history; however, the State agreed the defendant should be classified as a Range II offender.

At the sentencing hearing, the State presented evidence of the defendant's prior criminal convictions and argued they qualified as an enhancement factor since there were

more convictions than necessary to qualify for the Range II status under Tennessee Code Annotated § 40-35-114(1). The State also argued the defendant had been convicted of at least twelve cases of violence and was not amenable to correction. The State requested the trial court sentence the defendant to the maximum sentence of twenty years.

The defendant presented both a sentencing memorandum and letters from the defendant's family asking for leniency. The defendant asked the trial court to impose the twelve-year minimum sentence, arguing that it met the purpose of Tennessee's criminal sentencing statute. However, the defendant conceded his record included convictions in addition to those necessary to establish him as a Range II offender.

After hearing both parties, the trial court acknowledged it had considered the presentence investigation, the defendant's sentencing memorandum, and the letters submitted on behalf of the defendant. Ultimately, the trial court found the State had proven there were convictions in addition to those necessary to establish the range and did not find any legally sufficient mitigating factors applicable. The trial court stated that the defendant's "extensive record is beyond question" and imposed a sixteen-year sentence as a Range II offender.

The defendant filed this timely appeal.

*Analysis*

## I.     Sufficiency of the Evidence

On appeal, the defendant argues that the evidence presented at trial was insufficient to support his conviction for possession of a firearm by a convicted felon. The State contends the evidence was sufficient for a reasonable jury to find the defendant constructively possessed the firearm. Upon our review of the record and applicable law, we agree with the State and affirm the defendant's conviction.

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190–92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pappas*, 754 S.W.2d 620,

623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

Tennessee Code Annotated § 39-17-1307(b)(1) makes it a Class B felony for any person who has previously been convicted of a felony involving the use of or attempted use of force, violence, or a deadly weapon to subsequently unlawfully possess a firearm. *Id.* §39-17-1307(b)(1)(A) and (b)(2). "Possession may be actual or constructive." *State v. Robinson*, 400 S.W.3d 529, 534 (Tenn. 2013) (citing *State v. Shaw,* 37 S.W.3d 900, 903 (Tenn. 2001)). Actual possession "refers to physical control over an item." *State v. Fayne*, 451 S.W.3d 362, 370 (Tenn. 2014). On the other hand, constructive possession is established when a person has "'the power and intention at a given time to exercise dominion and control over [an object] either directly or indirectly or through others.'" *Shaw*, 37 S.W.3d at 903 (quoting *State v. Patterson*, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997). "Constructive possession is the ability to reduce an object to actual possession." *State v. Ross*, 49 S.W.3d 833, 845-46 (Tenn. 2001) (quoting *State v. Transou*, 928 S.W.2d 949, 955-56 (Tenn. Crim. App. 1996)). Constructive possession depends on the totality of the circumstances in each case and may be established through circumstantial evidence. *Robinson,* 400 S.W.3d at 534. "Knowledge may be inferred from control over the vehicle in which the contraband is secreted." *State v. Jones*, No. W02C01-9801-CC-11126, 1998 WL 886567, *2 (Tenn. Crim. App. Dec. 21, 1998).

The defendant argues that the evidence at trial was insufficient to establish that he possessed the firearm because the State failed to prove the defendant knew of the firearm's presence, that the truck belonged to the defendant, or that the defendant was the owner of the backpack in which the firearm was found. However, when viewed in the light most

favorable to the State, the evidence shows that the defendant was the lone occupant and driver of the vehicle and that a firearm was found within two feet of where he was sitting. The evidence establishes that the firearm was located where the defendant had power over and the ability to exercise control over the gun. Therefore, the evidence was sufficient to find the defendant constructively possessed the firearm. *See State v. Mooney*, No. W2019-01309-CCA-R3-CD, 2020 WL 2765847, *4 (Tenn. Crim. App. May 27, 2020) (concluding that a bag containing a weapon found in the floorboard of the passenger's side of the defendant's truck was within the defendant's constructive possession), *See also State v. Ford,* No. W2015-02407-CCA-R3-CD, 2017 WL 838483, at *4 (Tenn. Crim. App. Mar. 3, 2017) (concluding there was sufficient proof of constructive possession where the weapon was found in the defendant's bedroom and would have been easily accessible to him).

The defendant relies on *United States v. Bailey*, 553 F.3d 940 (6th Cir. 2009), to argue that the mere fact that the defendant was driving the vehicle in which the firearm was found is not sufficient to establish constructive possession. In *Bailey*, the Sixth Circuit found that the "mere fact that Bailey was driving the car in which the police found the firearm is not enough to establish dominion over the premises and thereby dominion and control over the firearm." *Id.* at 947. The Sixth Circuit required a further nexus beyond mere proximity, or "other incriminating evidence," in order to find constructive possession. *Id.* (quoting *United States v. Arnold*, 486 F.3d 177 (6th Cir. 2007).

The defendant's reliance on *Bailey* is not persuasive. Even under the heightened federal standard espoused in *Bailey*, sufficient evidence still existed in the case at bar to establish the defendant constructively possessed the firearm. The first piece of incriminating evidence corroborating the defendant's possession was the ammunition found inside the driver's side door and floorboard of the vehicle. In addition, the defendant knew there were syringes in the vehicle and one syringe was found inside the backpack with the firearm. The defendant even informed officers that there might be syringes in the backpack. Finally, the defendant's comment to Officer Hager that he would either evade arrest or shoot himself if he were pulled over could have been inferred by the jury to show the defendant knew of the firearm and had been prepared to use it. When these pieces of evidence are coupled with the proximity of the defendant to the firearm at the time of arrest, the evidence presented at trial was sufficient to meet even the heightened standard found in *Bailey*.

Viewing this evidence in the light most favorable to the State, a reasonable jury could find beyond a reasonable doubt that the defendant knew the firearm was in the vehicle and that he had power to exercise dominion or control over it. Therefore, the State presented sufficient evidence, based upon the totality of the evidence enumerated above

and the firearm's proximity to the defendant, that the defendant had constructive possession of the firearm. The defendant is not entitled to relief on this issue.

## II.    <u>Sentencing</u>

In determining an appropriate sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf as to sentencing; (8) the result of the validated risk and needs assessment; and (9) the potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -113, -114, -210(b). In addition, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." *Id.* § 40-35-103(4).

Pursuant to the 2005 amendments, the Sentencing Act abandoned the statutory presumptive minimum sentence and rendered enhancement factors advisory only. *See* Tenn. Code Ann. § 40-35-114, -210(c). The 2005 amendments set forth certain "advisory sentencing guidelines" that are not binding on the trial court; however, the trial court must nonetheless consider them. *See id.* § 40-35-210(c). Although the application of the factors is advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114." *Id.* § 40-35-210(b)(5). The trial court must also place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing." *Id.* § 40-35-210(e). The weighing of mitigating and enhancement factors is left to the sound discretion of the trial court. *State v. Carter,* 254 S.W.3d 335, 345 (Tenn. 2008). The burden of proving applicable mitigating factors rests upon the appellant. *State v. Moore,* No. 03C01-9403-CR-00098, 1995 WL 548786, at *6 (Tenn. Crim. App. Sept. 18, 1995) (citation omitted). The trial court's weighing of the various enhancement and mitigating factors is not grounds for reversal under the revised Sentencing Act. *Carter,* 254 S.W.3d at 345 (citing *State v. Banks,* No. W2005-02213-CCA-R3-DD, 2007 WL 1966039, at *48 (Tenn. Crim. App. July 6, 2007), *aff'd as corrected,* 271 S.W.3d 90 (Tenn. 2008)).

The sentence range for a Range II, multiple offender, convicted of a Class B felony, is not less than twelve years nor more than twenty years. Tenn. Code Ann. § 40-35-112(b)(2). Within-range sentences that are supported by the record and reflect that the trial court properly applied the purposes and principles of sentencing are reviewed for an abuse of discretion, with a presumption of reasonableness. *State v. Bise,* 380 S.W.3d 682, 707-8

(Tenn. 2012).  If a trial court misapplies an enhancement or mitigating factor in passing sentence, said error will not remove the presumption of reasonableness from its sentencing determination.  *Id.* at 709.  This Court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10.  Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result.  *See Carter,* 254 S.W.3d at 346.  The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous.  *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn. 1991).

During the sentencing hearing, the trial court stated that it had "read the pre[]sentence investigation, the sentencing memorandum filed by the defense, and the letters."  Additionally, the trial court found that the State had proven the existence of an enhancement factor – "convictions in the defendant's record in addition to those necessary to establish the range."  The trial court, therefore, considered the information presented by both parties.  We conclude that the trial court properly applied the purposes and principles of sentencing and gave the defendant an in-range sentence.  We will, therefore, review the defendant's sentence under an abuse of discretion standard with a presumption of reasonableness.  *See State v. Christian*, No. M2018-00320-CCA-R3-CD, 2019 WL 3948933, * 7 (Tenn. Crim. App. June 18, 2019).

Defendant contends the trial court abused its discretion when it "ignored the State's failure to file enhancement factors," and instead improperly based its decision on "personal beliefs regarding gun crimes."  The State argues the trial court did not abuse its discretion in sentencing the defendant.  We agree with the State.

The record is clear that the State filed its "Notice of Intent to Seek Enhanced Punishment and Range Notice" in November of 2021 and September of 2022.  The State's filing put the defendant on notice of the State's intention to seek an enhanced sentenced based upon his numerous felony convictions.  Thereafter, the trial court's use of the convictions as an enhancement factor pursuant to Tennessee Code Annotated § 40-35-114(1) was proper.

This Court is "bound by [the] trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Carter*, 254 S.W.3d at 346.  The record reflects the trial court imposed a sentence within the applicable range and set forth its reasons for doing so.

Additionally, the defendant contends that the trial court improperly "focused on its personal dislike of weapons charges."  However, a review of the record reveals that while

the trial court expressed its frustration with the frequency in which gun possession cases were appearing on its docket, the trial court specifically noted that it was not going to take its "frustration" out on the defendant. Rather, the trial court stated, "I'm not going to give you twenty years. I could do it and go home and lay down and sleep tonight like a baby, but I'm not going to do that. I'm going to treat you as what I think is fair based on the law, whether I agree with the law or not." The trial court then imposed a sixteen-year sentence based on the defendant's criminal history. Contrary to the defendant's claim, the record reveals that though the trial court expressed frustration with the numerous gun cases it was seeing, the court specifically stated that it was not taking those cases and its frustration into account in sentencing the defendant. Accordingly, the defendant is not entitled to relief.

### III. Count 2 and Count 4 Judgment Forms

The defendant and the State agree the judgments for Count 2 and Count 4 contain errors. More specifically, as noted by both parties, the judgment for Count 2, altered license plate, reflects a guilty verdict by the jury; however, the State dismissed this charge at the close of its proof. Additionally, the judgment for Count 4, violation of registration, shows that the matter was nolle prosequi, but in fact, the defendant was acquitted of this charge by the jury. Accordingly, the case is remanded to the trial court for entry of corrected judgments to be entered on these counts.

### IV. Application of Pretrial Jail Credit

Lastly, the defendant argues the judgments against him failed to apply jail credit for time spent in confinement awaiting trial. A defendant is eligible to receive pretrial jail credit "for any period of time for which the defendant was committed and held in the … county jail or workhouse, pending arraignment and trial." Tenn. Code Ann. § 40-23-101(c).

It appears from the judgments entered into the record, that pre-trial jail credit was not awarded to the defendant. Because the record does not include sufficient proof as to the amount of time that should have been awarded, we are unable to give meaningful review. Therefore, we remand to the trial court to determine whether the defendant is entitled to pretrial jail credit and, if so, enter corrected judgments accordingly.

**Conclusion**

Based on the foregoing authorities and reasoning, we affirm the defendant's conviction for possession of a firearm and the trial court's sentencing determination, but remand for the trial court to determine, and award if necessary, the amount of pretrial jail

credit to be applied to the defendant's sentence and for entry of corrected judgments in Counts 2 and 4.


 

_____

J. ROSS DYER, JUDGE