NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0029n.06

No. 24-6133

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jan 15, 2026
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| TOMMIE CONNER, | ) | TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

Before: CLAY, KETHLEDGE and LARSEN, Circuit Judges.

**CLAY, Circuit Judge.** Police officers observed a gun and magazine inside Defendant Tommie Conner's Dodge Durango during a traffic stop. After discovering that Mr. Conner was a convicted felon, police procured a search warrant for the car, recovered the gun, and arrested him. A jury in the Western District of Tennessee found Defendant guilty of being a felon in possession of a firearm in violation 18 U.S.C. § 922(g). The jury also found that Defendant qualified for a sentence enhancement under 18 U.S.C. § 924(e), the Armed Career Criminal Act, which imposes a 15 year mandatory minimum on anyone who violates § 922(g) and who "has three previous convictions . . . for a violent felony . . . committed on occasions different from one another." The district court sentenced Defendant to 200 months in prison. For the reasons set forth below, we **AFFIRM** the district court.

## I. FACTUAL BACKGROUND

On March 4, 2021, Officer Jacques Roberts of the Memphis Police Department ("MPD") observed a Dodge Durango speeding on a 45-mile-per-hour speed limit road called American Way.

He confirmed that the Durango was driving above the posted speed limit, by 'pacing'[1] it for "probably a quarter mile." Tr., R. 88, Page ID #246. He recorded the Durango's speed at 60 miles-per-hour. After the Durango turned off of American Way and into the parking lot of a hotel, Officer Roberts told nearby police to be on the lookout for the speeding car.

When the Durango pulled out from the hotel parking lot and back onto American Way, MPD Officer Ryan Walker began following it. Officer Walker paced the car for just under a minute, recording its speed at 48 to 50 miles per hour in the same 45 mile-per-hour zone. Officer Walker then activated his blue lights, and the Durango pulled off the road into a Waffle House parking lot.

When Officer Walker arrived at the parked Durango, the driver was not in the car. He also did not see who had gotten out of the car. Patrons at the Waffle House, however, indicated that the driver of the Durango was standing by the restaurant's door. There, Officer Walker and other officers who had arrived at the scene made contact with Tommie Conner. Mr. Conner told the officers that he was not the driver of Durango and said that he had been dropped off at the Waffle House; he also refused to give officers his name.

Officer Walker then stepped away from the entrance of the Waffle House to check the vehicle's VIN number, leaving another officer with Mr. Conner. Upon returning to the Durango, Officer Walker noted that there was a magazine in the car, which he could see through the window.

---

[1] "Pacing" is when a police officer follows a vehicle suspected of speeding "at a constant interval for a distance adequate . . . to obtain a reading on speedometer indicating a speed exceeding that posted." MEMPHIS POLICE DEPARTMENT POLICY MANUAL, 04-015 TRAFFIC ENFORCEMENT, 10, available at https://www.memphispolice.org/policies-and-procedures/.

When he stepped back toward the Waffle House, Mr. Conner was no longer there, and the other officer stated that he had run away.

Officers began searching for Mr. Conner and spotted him in a nearby hotel complex. Although Officer Walker and others gave chase, they were unable apprehend him. A few minutes later, officers again spotted Mr. Conner in the hotel complex and, following a brief foot chase, apprehended him. Mr. Conner stated that he had not done anything wrong and accused the police of trying to frame him for something. Police handcuffed Mr. Conner and placed him in their cruiser, and Officer Walker informed him that, so long as there were no warrants out on him, the police would write Mr. Conner a ticket and he could be on his way. Mr. Conner then provided his name and social security number.

At this point in the interaction, an officer can be heard on the bodycam footage stating that there was a gun in the car. When the police ran Mr. Conner's information, they discovered that his driver's license had been revoked in 1997 due to a DUI, and that he had a previous state law felony conviction for possession of a controlled substance. They also confirmed that the Durango was registered to Mr. Conner. When Officer Walker asked Mr. Conner for keys to open the locked Durango, Mr. Conner stated that he did not have any.

Accordingly, the police requested and were granted a warrant to search the vehicle. The affidavit for warrant recounted how police had observed the Durango speeding and stated the following relevant facts:

> The Durango . . . pulled onto the private drive of Waffle House . . .
> At that time, the driver of the Durango opened the driver side door
> and ran from the vehicle. Officers were able to detain the driver
> after a brief foot chase. . . . Officers returned to the Durango and
> could see through the driver window an orange and black handgun

on the passenger floor board and a semi-automatic handgun magazine loaded with bullets on the center console.

Warrant App., R. 49-1, Page ID #74. Following the execution of the warrant, officers searched the Durango and recovered an orange and black 9mm handgun loaded with one bullet and a magazine loaded with additional 9mm bullets.

## II.  PROCEDURAL BACKGROUND

In September 2021, a grand jury indicted Mr. Conner on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  In November 2022, a grand jury issued a superseding indictment, adding to the indictment that 18 U.S.C. § 924(e) applied to Mr. Conner's § 922 charge because Mr. Conner had at least three prior felony convictions.  Section 924(e)(1), also known as the Armed Career Criminal Act, states that "[i]n the case of a person who violates section 922(g) of this title and has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years."  Mr. Conner's previous felony convictions relevant to this appeal were for robberies he committed in 1992 between November 9 and December 20 when he was 17 years old.

During pretrial proceedings, Mr. Conner filed a motion to suppress evidence discovered as a result of the search of his car, which the government opposed.  Mr. Conner argued that the search of his car violated the Fourth Amendment because the affidavit for the search warrant contained numerous false statements and that, without those false statements, the police would not have been able to show that there was probable cause to search his car.  A magistrate judge issued a Report and Recommendation concluding that the court should deny the motion because the statements in

the affidavit were not false and, in any event, those statements were not necessary to supply probable cause.

Mr. Conner later filed a motion to reopen the suppression hearing based on a technical issue with the video footage of the arrest. He also argued at the reopened suppression hearing that the police's traffic stop violated his Fourth Amendment rights because it was unsupported by probable cause. Specifically, he argued that there was "no conclusive evidence to suggest that [he] actually was speeding." Mot. to Reopen, R. 66, Page ID #102. The magistrate entered an Amended Report and Recommendation, again suggesting that the district court deny the motion to suppress. The district court adopted the magistrate's Amended Recommendation and Report and denied Mr. Conner's motion to suppress.

Mr. Conner's case proceeded to bifurcated trial: in phase one, the jury considered whether he was guilty of being a felon in possession of a firearm under § 922(g); in phase two, the jury considered whether Mr. Conner's 1992 robberies constituted at least three prior violent felonies that occurred on separate occasions to determine if he qualified for § 924(e). During phase one, the Defendant's ex-wife, Claressia Crawford, offered testimony that is relevant to this appeal. She testified that she owned the gun recovered from Mr. Conner's Durango and that, on March 4, 2021, she had placed it in the car without his knowledge. According to Ms. Crawford, she drove the Durango to her work earlier that day and brought the gun for her protection. She also testified that when she arrived at her workplace, she left the gun in the car, tucked between the center console and passenger-side seat, and then forgot to remove it from the Durango when she returned to the residence she shared with Mr. Conner. After arriving home, she took a bath, and without her knowledge, Mr. Conner departed in the Durango that still contained the gun. She added that,

during their marriage, she and Mr. Conner treated the Durango like a shared vehicle and that both of them drove it. Nonetheless, the jury found Defendant guilty of being a felon in possession of a firearm in violation of § 922(g).

In the second phase of the trial, the jury determined that, based on his four 1992 robberies, Mr. Conner had at least three prior felony convictions that were each committed on different occasions from one another, qualifying him for § 924(e)'s 15 year mandatory minimum sentence. The judge ultimately sentenced Mr. Conner to 200 months in prison.

## III. DISCUSSION

Defendant argues that we should overturn his § 922(g) conviction because: (1) the traffic stop that police performed of his Durango on March 4, 2021, was unsupported by probable cause; and (2) the affidavit for warrant that police used to procure the search warrant for the car contained false statements. He also contends that there was insufficient evidence to prove that he possessed the gun found in the Durango, as is required under § 922(g). Defendant also argues that we should overturn the jury's finding that he qualified for § 924(e)'s sentence enhancement because the jury instructions failed to adequately explain how to determine if his prior felonies were "committed on occasions different from one another" as is required by § 924(e)(1). He similarly asks us to find that the evidence was insufficient to prove that his prior felonies were committed on separate occasions. We affirm Defendant's conviction under § 922(g), and his sentence enhancement under § 924(e).

## A. Defendant's § 922 Conviction

### 1. Motion to Suppress

Defendant argues that the district court erred in denying his motion to suppress evidence gathered from the search of his Durango because police procured that evidence in violation of his Fourth Amendment rights. "In reviewing a district court's suppression determination, we review findings of fact for clear error, and legal conclusions *de novo*." *United States v. Moon*, 513 F.3d 527, 536 (6th Cir. 2008). Because the district court denied Defendant's motion to suppress, "we consider the evidence in the light most favorable to the government." *United States v. Carter,* 378 F.3d 584, 587 (6th Cir. 2004).

Defendant argues that the district court's admission into evidence of the gun and magazine police found in his Durango violated his constitutional rights for two reasons. First, he contends that the initial traffic stop conducted by Officer Walker constituted an unconstitutional seizure because the police had no conclusive evidence that he was speeding. He next argues that the search warrant for the car was invalid because the affidavit for the warrant contained false statements. We disagree with Defendant on both counts and find that evidence from the Durango was properly admitted at trial.

### a. Constitutionality of the Traffic Stop

A traffic stop for a civil violation, like the one performed on Defendant, is constitutional if the police have probable cause to believe that a traffic infraction occurred. *See United States v. Gross*, 550 F.3d 578, 581–82 (6th Cir. 2008); *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). In this case, the police initiated the traffic stop of Defendant's Durango because they observed him speeding. We have repeatedly held that police have probable cause to perform a traffic stop where

the defendant is speeding in violation of state law. *See United States v. Garrido-Santana*, 360 F.3d 565, 572 (6th Cir. 2004) ("Because defendant was speeding in violation of Tennessee law, [the officer] had probable cause to stop defendant's vehicle."); *see also United States v. Puckett*, 422 F.3d 340, 343 (6th Cir. 2005). Accordingly, this issue turns on whether police had probable cause to believe that Defendant was speeding.

Defendant contends that the pacing method used by Officers Rogers and Walker could not have adequately measured his speed, primarily because they did not pace him for long enough. We disagree.

We have consistently endorsed the use of pacing as an appropriate method to measure speed in Fourth Amendment cases where police officers paced a vehicle for less time than they did in this case. In *United States v. Puckett*, for instance, we held that Knoxville police had probable cause to perform a traffic stop after pacing a speeding car for "several blocks," which the defendant alleged amounted to "only a few seconds." 422 F.3d at 342. We found that this pacing was sufficient for the officer to form a "reasonable estimate of the defendant's speed." *Id.* at 343. In *United States v. Hill*, we similarly found that officers had probable cause to stop a speeding car after pacing behind it for "three-fourths of a mile." 195 F.3d 258, 261 (6th Cir. 1999).

In this case, the officers paced Defendant for significantly longer than the officers in *Hill* or *Puckett*. Officer Roberts paced the Durango for .25 to .3 of a mile, or 5 to 10 seconds, and estimated its speed to be 60 miles-per-hour in a 45 mile-per-hour zone; he then alerted Officer Walker, who further paced the vehicle for just under a minute,[2] recording its speed at 48 to 50

---

[2] The government contends that Officer Walker paced the Durango for 1.1 miles, which it calculates based on the assumption that he followed the car for a minute and 23 seconds at 48 miles per hour. *See* Appellee's Br. at 19, n. 4. The district court, however, found that Officer Walker tailed the Durango for just under a minute. *See* Amended

miles in the same 45 mile-per-hour zone . In total, they paced Defendant for, at minimum, around a mile, *see* n.2, which was more than sufficient to record the vehicle's speed.

We also see no practical reason for why the amount of time officers paced Defendant would be inadequate. MPD's own policies, which endorse the use of pacing to measure speed violations, instruct officers to follow the speeding vehicle "at a constant interval for a distance adequate, normally two or more city blocks, to obtain a reading on a speedometer indicating a speed exceeding that posted."[3] Tr., R. 88, Page ID #181. According to Officer Walker's testimony at the suppression hearing, two city blocks is around a quarter of a mile—significantly less distance than the distance for which the officers here paced Defendant.

To make his argument that the pacing was inadequate, Defendant relies on inapposite unpublished district court opinions. First, he discusses *United States v. Dillard-Cribbs*, where the court held that a traffic stop was not supported by probable cause where the government presented "no evidence" that the defendant was speeding outside of a "conclusory statement" from the state trooper who performed the stop. 2018 WL 916365, *4 (E.D. Ky. Feb. 16, 2018). Indeed, the government did not even offer evidence of "the posted speed limit" where defendant was driving. *Id.* He also points to *United States v. Hayes*, where the court found that an officer lacked probable cause to stop the defendant for speeding after 'pacing' him for "only a few seconds" and later

---

R&R, R.78, Page ID #124. Even if we take a very modest estimate of the distance for which Officer Walker paced the Durango—say, travelling 50 miles/hour for 50 seconds—he still would have paced it for at least 0.7 miles.

[3] At the suppression hearing, Officer Walker read the pacing policy from a copy of the Memphis Police Department's official policies and procedures admitted into evidence by the government. Although the trial record does not contain a readily available copy of this exhibit, this recitation of the policy comports with the pacing policy found on the copy of the official policies found on the Department's official website. *See* MEMPHIS POLICE DEPARTMENT POLICY MANUAL, 04-015 TRAFFIC ENFORCEMENT, 10, available at https://www.memphispolice.org/policies-and-procedures/.

admitting that he had not "conduct[ed] a 'true, actual pace,' because he did not pace the [car] for a sufficient distance." 2020 WL 4034309, at *11 (E.D. Tenn. Feb. 21, 2020).

In addition to holding no precedential value here, Defendant's cases are distinguishable. In this case, both officers testified in significant detail at the suppression hearing about how they measured Defendant's speed in compliance with MPD policy. The government also submitted corroborating evidence including an incident report, maps of the relevant roadways, and body and dashcam footage. This evidence was more than enough for the district court to conclude that the officers had probable cause to know the Durango was speeding and conduct a traffic stop. *Cf. Puckett*, 422 F.3d at 343 (holding that, based on the officer's testimony that Defendant was speeding and corroborating testimony from an expert witness, there was probable cause to perform a stop).

Accordingly, we conclude that the traffic stop was supported by probable cause.

### b. Validity of the Warrant

Defendant also contends that the district court should have excluded the evidence recovered from the Durango because the affidavit submitted in support of the officer's request for the search warrant contained false statements. If a defendant proves by a preponderance of the evidence that an affidavit for a search warrant contained false statements, "and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded." *Franks v. Delaware*, 438 U.S. 154, 156 (1978). We find that there were no material false statements in the affidavit for warrant and that the warrant was valid. We thus do not reach the issue of whether there was probable cause to search the car absent statements in the affidavit.

Defendant claims that the following statements in the affidavit for warrant were false: (1) that the driver of the Durango refused to pull over when Officer Walker activated his blue lights on American Way; (2) that the driver ran from the driver side door of the Durango after pulling into the Waffle House parking lot; and (3) that police engaged in a foot chase of Defendant. The district court found that none of these statements were false. We agree.

Although Defendant says that Officer Walker did not activate his blue lights until he had pulled into the Waffle House parking lot, the dashcam footage unequivocally show that he activated the lights at least a block before the Waffle House while driving on American Way. The driver's actions after the blue lights were activated were more ambiguous, but we do not think the district court erred in finding that the driver refused to pull over. The footage shows the car moving from the middle lane to the right lane after the lights began, but Defendant never attempted to pull onto the right shoulder of the road as is customary in a traffic stop. Furthermore, Defendant's actions once in the parking lot demonstrate that he "did not acquiesce to the traffic stop" because he "immediately exited the vehicle and attempted to avoid interaction with the police." Am. R&R, R. 78, Page ID #136. Accordingly, it was correct for the district court to conclude that the affidavit accurately described the Defendant's failure to pull over after Officer Walker activated his lights.

We also find that the district court did not clearly err in concluding that the affidavit was accurate when it stated that Defendant ran from the driver-side door of the Durango once in the parking lot. Defendant is correct that Officer Walker did not actually see Defendant get out of the Durango. *See* Walker Redacted Bodycam at 00:05:27 (Officer Walker stating, "I did not see anyone get out of the car."). However, based on the dashcam footage, it appears that when Officer Walker pulled into the parking lot, his position allowed him to see the passenger-side door of the

car, from which no one can be seen exiting. And we agree with the district court that the "dashcam footage shows, 'a shadow moving under the car,'" by the driver-side door, which "corroborate[s] Defendant's disappearance from the vehicle." Ord., R. 84, Page ID #155 (citation omitted). That coupled with the facts that (1) the car was empty when Officer Walker approached it and (2) bystanders identified Defendant as the driver lead us to agree with the district court that "'common sense' showed that the driver exited the vehicle" and the affidavit's description was "not a false characterization." *Id.* (citation omitted). It is true that there is no definitive evidence to support the affidavit's contention that Defendant "ran" from the Durango, but such a minor inaccuracy does not invalidate the warrants. *Cf. United States v. Hang Le-Thy Tran*, 433 F.3d 472, 479–80 (6th Cir. 2006) (holding that "[a]n error in description" such as including an incorrect address in a warrant and affidavit does not "invalidate the search warrant.").

Finally, the affidavit's statement that the police engaged in a foot chase of Defendant prior to detaining him is obviously accurate. The bodycam footage clearly shows police engaging in two separate foot chases while Defendant attempted to evade police by hiding in a nearby hotel complex. At the end of the second foot chase, police apprehended Defendant.

Based on our review of the record, it is clear that there were no materially false statements in the warrant affidavit. It is also clear that, even if we exclude the statements just discussed, the facts recited in the affidavit provided probable cause sufficient to support the warrant. The affidavit clearly set forth that Defendant was a convicted felon and that police had observed a gun through the window of his car—and Defendant does not challenge either of these statements. Consequently, based on "all the circumstances set forth in the affidavit before him," the magistrate

was correct to determine that "there [was] a fair probability that contraband or evidence of a crime [would] be found in" the car and thus issue the warrant. *Illinois v. Gates,* 462 U.S. 213, 238 (1983).

Because the traffic stop and warrant supporting the search of Defendant's car both clearly pass constitutional muster, we hold that the district court did not err in denying Defendant's motion to suppress the evidence found in the Durango.

### 2. Possession of the Gun

The jury found Defendant guilty of violating 18 U.S.C. § 922(g), which makes it a crime for convicted felons to "possess . . . any firearm or ammunition." To prove a violation of § 922(g), the government "must show that the defendant knew he possessed a firearm and also . . . knew he had the relevant [prohibited] status when he possessed it." *Rehaif v. United States*, 588 U.S. 225, 227 (2019). Defendant argues that there was insufficient evidence in this case to prove that he "possessed" the gun found in his car. There is ample evidence to find to the contrary.

We review a sufficiency of the evidence challenge *de novo* to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). If a rational trier of fact could have so found, we must affirm the judgment. *Id*.

Under § 922(g), a defendant may possess a gun in two ways: (1) he may have "actual possession" of the gun if he "knowingly has direct physical control over [the gun] at a given time"; and (2) he may have "constructive possession" if, absent actual possession, he "*knowingly* has the power and the *intention* at a given time to exercise dominion and control over [the gun], either

directly or through others." *United States v. Bailey*, 553 F.3d 940, 944 (6th Cir. 2009) (citations omitted).

Defendant likely did not have actual possession of the gun. We generally find actual possession only where there is strong evidence showing that the defendant exercised active physical control of the firearm at a specific point in time. In *United States v. Morrison*, we found that the defendant actually possessed a firearm that the police discovered between the driver's seat and the center console of his car such that the gun was "less than inches" away from the defendant and "probably was rubbing his side" as he drove. 594 F.3d 543, 544 (6th Cir. 2010). Analogizing the firearm's position to a gun in a holster that an individual carries on his person, we determined that the defendant exercised actual control over it. *Id.* at 545. Similarly, in *United States v. Garcia*, we determined that the defendant actively possessed a gun after police observed objects fall from the defendant's person during a police chase and subsequently discovered a revolver in the exact spot where they had seen the objects fall. 758 F.3d 714, 717 (6th Cir. 2014). And in *United States v. Brooks*, we found actual possession where officers observed the defendant making a "stuffing motion" under a seat in his car during a traffic stop and then later discovered a gun in that exact same spot. 987 F.3d 593, 602 (6th Cir. 2021).

Unlike any of these cases, there is little evidence in this case indicating that Defendant exercised actual physical control of the gun at any specific time. The government argues that the gun and magazines were found in different locations of the car than where Defendant's ex-wife testified she left them, which indicates that Defendant had moved them. However, Defendant's fingerprints were found on neither. And compared to the quantum of evidence in *Morrison,*

*Garcia*, and *Brooks*, the mere possibility that Defendant may have moved the gun at some point might not be enough to find actual possession.

The more difficult question is whether there was sufficient evidence that Defendant constructively possessed the firearm. Under these circumstances, we hold that there was. Our caselaw is clear that mere proximity to a gun is not enough to establish constructive control; instead "'other incriminating evidence coupled with presence' is needed to 'tip the scale in favor of sufficiency.'" *United States v. Grubbs*, 506 F.3d 434, 439 (6th Cir. 2007) (quoting *United States v. Arnold,* 486 F.3d 177, 183 (6th Cir. 2007)). Importantly, to prove that a defendant constructively possessed a gun, the government must show that he "*intended* to exercise dominion or control over it." *Bailey*, 553 F.3d at 945 (citation omitted) (cleaned up) (emphasis added).

First we note that there are several factors militating against finding that Defendant constructively possessed the gun. Although the government presented sufficient evidence to prove that Defendant exercised control over the Durango and that the gun was inside the car, it did not present extensive evidence indicating that he exercised dominion over the gun itself. And Defendant's ex-wife's testimony that the gun belonged to her and that she placed it in the couple's shared Durango without Defendant's knowledge tends to indicate that Defendant did not exercise sole or complete dominion over the car and its contents. This supports Defendant's position that he did not intend to possess the gun on the night of his arrest. *See Bailey*, 553 F.3d at 946 (concluding that the defendant did not constructively possess the gun at issue in part due to "uncontradicted testimony" that the defendant was not the sole user of the car in which the gun was found). The government's argument that Defendant's attempts to evade police tie him to the gun is also unavailing; he may have been evading police because he was driving on an expired

license, not because he believed he would get in trouble for gun possession. *See, e.g., id.* at 946 ("The attempt to evade arrest, however, proves little because [the defendant] might well have taken this action in an effort to evade detection of the two bags of crack cocaine found in his pants.").

There are also several factors indicating that Defendant did have constructive possession of the gun. First, the gun, which was bright orange, was in clear view on the floor of the Durango, and we believe that this is sufficient evidence that he knew that the gun was in the car. Although knowledge that a firearm is present is not enough to show constructive possession, our caselaw is clear that "[w]hen the defendant is found in close proximity to a firearm at the time of the arrest, the inference of dominion and control is particularly strong, and thus the incriminating evidence needed to corroborate the conviction is less." *Grubbs*, 506 F.3d at 440. And, as the owner and sole driver of the Durango at the time of the arrest, Defendant clearly exercised dominion and control over the vehicle in which the gun was found. In this Circuit, "to establish constructive possession, the evidence must indicate 'ownership, dominion, or control over the contraband itself *or the premises or vehicle in which the contraband is concealed*." *See United States v. White*, 932 F.2d 588, 589 (6th Cir. 1991) (citation omitted) (emphasis added). Under our precedent, then, the strong inference of control created by Defendant's proximity to the gun along with the additional incriminating evidence of his ownership of the Durango makes it hard to fault the jury's conclusion that Defendant constructively possessed the gun.

It is not our place to "weigh the evidence, consider the credibility of witnesses or substitute our judgment for that of the jury" in our sufficiency review. *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Although we find plausible the scenario described by Ms. Crawford in her testimony, the existence of some alternative explanation does not mean that the evidence,

construed most favorably for the prosecution, was insufficient to sustain Defendant's conviction. *See United States v. Adamo*, 742 F.2d 927, 932 (6th Cir. 1984). Ultimately, we believe that a rational juror could have determined that Defendant constructively possessed the gun, and we thus hold that there was sufficient evidence to convict him under § 922(g).

Accordingly, we affirm Defendant's § 922(g) conviction.

### B. Application of the Armed Career Criminal Act

Defendant also argues that we should reverse the jury's finding that § 924(e) applied to his §922(g) conviction. Section 924(e) imposes a 15 year mandatory minimum sentence on § 922(g) defendants who have at least three prior convictions for "violent felonies or serious drug offenses" that "were 'committed on *occasions different from one another*.'" *United States v. Durham*, 151 F.4th 821, 824 (6th Cir. 2025) (quoting 18 U.S.C. § 924(e)(1)) (emphasis added). Defendant argues that the jury instruction on how to perform this 'separate occasion' inquiry was deficient. He also argues that the evidence was insufficient to find that his prior felonies were committed on separate occasions. We affirm the application of § 924(e) to Defendant's sentence.

### 1. Jury Instruction Challenge

We decline to reach Defendant's jury instruction challenge because he invited the error of which he now complains. Under the invited-error doctrine, we may decline to review jury instructions where the defendant (1) failed to object to the instruction given by the district court and (2) submitted the challenged instruction to the court. *See United States v. Sharpe*, 996 F.2d 125, 129 (6th Cir. 1993). The 'separate occasions' instruction given by the district court read:

> In determining whether the crimes were committed on different occasions you may consider any evidence including whether the offenses were close in time, whether they were close in location, and

> the character and relationship of the offenses, such as whether they shared a common scheme or purpose or were similarly intertwined.

Closing Instructions, R. 103, Page ID #332; Tr., R. 129, Page ID #1007.

The 'separate occasions' instruction submitted by Defendant was strikingly similar and read:

> In determining whether crimes were committed on different occasions, you may consider a variety of factors including the timing and proximity of location and whether they share a common scheme or purpose, the character and relationship of the offenses, whether they are similarly intertwined and whether they are close in time.

Proposed Instructions, R. 98, Page ID #299.

Defendant's challenge thus satisfies both elements of the invited error doctrine. As to the first element, Defendant not only failed to object to the instruction issued by the district court, he affirmatively assented to it. As to the second element, Defendant's proposed instruction was materially identical to those issued by the district court, some minor stylistic differences notwithstanding. The problem of the instructions' similarity is exacerbated by the fact that he argues in this appeal that the court's instructions were "far too simplistic to properly inform the jury on how to conduct the occasional inquiry" because they "provide little to no definition or direction to the jury concerning how to apply the three key factors" prescribed by *United States v. Erlinger*, 602 U.S. 821 (2024) and *Wooden v. United States*, 595 U.S. 360 (2022): "timing, proximity in location, and character and relationship of the offenses." Appellant Br. at 38. But the instructions Defendant submitted were also devoid of the definitions he now says were vital. Because Defendant clearly invited the precise error of which he now complains, we decline to review his jury instruction challenge.

## 2. Sufficiency of the Evidence

Defendant next argues that the evidence presented to the jury was insufficient to find that he committed at least three felonies on prior occasions, as is required for § 924(e)'s mandatory 15 years minimum to apply. We review Defendant's sufficiency challenge *de novo*, "viewing the evidence in the light most favorable to the prosecution," and may only overturn the conviction if we conclude that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Davis*, 473 F.3d 680, 681 (6th Cir. 2007) (quoting *Jackson v. Virginia,* 443 U.S. at 319).

Under this limited review, we hold that a rational trier of fact could have found that Defendant had three prior felony convictions committed on different occasions. To determine if a defendant's prior felonies occurred on different occasions, the jury must consider (1) how close in time the felonies occurred, (2) the physical distance between the locations at which the felonies were committed, and (3) how similar or intertwined the offense conduct of the felonies was. *Wooden*, 595 U.S. at 369.

The separate occasions standard is fluid and non-mechanical: it does not strictly dictate one right outcome that a reasonable jury must reach in assessing a given set of facts. In *Erlinger*, for example, the Court determined that it was not immediately clear under *Wooden* that the defendant's prior offenses, burglaries of several different stores over a multiple day span, constituted separate occasion offenses. 602 U.S. at 835. The Court opined that, "[p]resented with evidence about the times, locations, purpose, and character of those crimes, a jury might have concluded that some or all occurred on different occasions. Or it might not have done so." *Id.*

The evidence in this case is not so clear cut as for us to hold that *no* rational trier of fact could have determined that Defendant's prior felonies occurred on three separate occasions. The character and nature element weighs in Defendant's favor due to how similar his four prior offenses were—they were all armed "stick up" robberies of individuals in which he took personal belonging or cash, and all four robbery cases were consolidated so that Defendant was tried and sentenced on them concurrently. The evidence on location was somewhat murky: the only clear locational evidence presented to the jury was that all of the robberies occurred within the same Tennessee county. However, the timing element swings in the government's favor. The government showed that Defendant committed these four robberies between November 9 and December 20, 1992, meaning that they were separated from each other by up to six weeks—a significant amount of time.

Some of our cases have found that where a defendant's prior offenses were separated by similar lapses in time and distance as Defendant's, a jury could have determined that Defendant's prior offenses occurred on the same occasion. *See, e.g., United States v. Cogdill*, 130 F.4th 523, 528–30 (6th Cir. 2025); *United States v. Durham*, 151 F.4th 821, 824, 830–31 (6th Cir. 2025); *United States v. Kimbrough*, 138 F.4th 473, 478 (6th Cir. 2025). But that does not mean that a rational jury could not have found that Defendant's felonies occurred on separate occasions. Assessing the *Wooden*/*Erlinger* "multi-factored" separate occasions inquiry holistically, and considering the "range of circumstances" the jury had to weigh in performing the inquiry, we conclude that a rational jury could have determined that Defendant committed at least three prior felonies on separate occasions. *Wooden*, 595 U. S. at 369, 375.

Accordingly, we hold that there is sufficient evidence to uphold the jury's application of § 924(e)'s enhancement to Defendant's § 922(g) conviction.

## IV.  CONCLUSION

For the reasons set forth above, we **AFFIRM** Defendant's conviction under § 922(g) and the application of § 924(e)'s enhancement to Defendant's sentence.